UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL ACTION NO.: 1:09-cv-00377

HARLEYSVILLE MUTUAL )
INSURANCE COMPANY, )
    Plaintiff and )
    Cross-Defendant, )
vs. )
     )
RICHMOND HILL, INC., )
    Defendant and )
    Cross-Claimant. )

## MOTION TO TRANSFER

NOW COMES Defendant Richmond Hill, Inc. ("RHI"), by and through the undersigned counsel and moves to transfer this Declaratory Judgment Action to the Honorable George Hodges of the United States Bankruptcy Court for the Western District of North Carolina, Asheville Division, pursuant to 28 U.S.C. § 1412 or, alternatively, under 28 U.S.C. § 1404(a) and in support thereof refers the Court to Defendant RHI's Brief in Support of its Motion to Transfer.

## ANSWER

WITHOUT WAIVING THIS MOTION, NOW COMES the Defendant RHI, by and through undersigned counsel and answers the Complaint of the Plaintiff as follows:

1.     RHI is without sufficient information to admit or deny the allegations of Paragraph 1; therefore, the allegations of Paragraph 1 are hereby denied.

2.     Admitted.

## JURISDICTION AND VENUE

3.     The allegations in Paragraph 3 contain legal conclusions to which no response is required. To the extent a response is required, it is admitted that this Court has jurisdiction to hear this matter. All remaining allegations are denied.

4.     The allegations in Paragraph 4 contain legal conclusions to which no response is required. To the extent a response is required, it is admitted that this Court has jurisdiction to hear this matter. All remaining allegations are denied.

5.   Admitted.

## RHI'S CLAIM TO BE A MORTAGEE UNDER THE POLICY

6.   It is admitted that Harleysville Mutual Insurance Company ("Harleysville") issued a fire insurance policy (the "Harleysville policy" or "the Policy") to the Hammocks, LLC ("the Hammocks") for the property at 87 Richmond Hill Drive, Asheville, North Carolina 28806 (the "Property"). Exhibit A to Plaintiff's Complaint is a document, the terms of which speak for themselves. Except as admitted, denied.

7.   It is admitted that the Hammocks is registered to do business in North Carolina as a limited liability company and that it has operated the Richmond Hill Inn. Exhibit A to Plaintiff's Complaint is a document, the terms of which speak for themselves. Except as admitted, denied.

8.   Admitted.

9.   It is admitted that the Harleysville policy was one of the later fire insurance policies the Hammocks secured for the Property. It is admitted that, upon information and belief, the Harleysville Policy No. OF-3M2977 has not been renewed beyond October 19, 2009.

10.  Under the Harleysville policy, Harleysville provided the Hammocks, among other coverages, more than $13.2 million in fire insurance on a 1889 Victorian mansion (the "Mansion"), the buildings, and personal property at the Property and an additional $3 million in "income coverage" insuring the Hammocks against lost income and extra expenses resulting from a fire loss. It is further admitted that the Harleysville policy further insured the Mansion against fire loss at its "agreed value," $5,089,119.00, with a $10,000.00 deductible; insured the personal property at the Property against fire damage at its "agreed value," $1,500,000.00, with a $10,000.00 deductible; provided $50,000.00 in insurance coverage for debris removal; and provided $3,000,000.00 in coverage insuring rents and earnings lost and extra expenses incurred by reason of a fire. Except as admitted, denied.

11.  Exhibit A to Plaintiff's Complaint is a document, the terms of which speak for themselves. Except as admitted, denied.

12.  It is admitted that the blanks on the Policy for listing mortgagees were not completed. Except as admitted.

13.  It is admitted that the Richmond Hill Inn has been owned by the Hammocks and Gateway Park Properties, LLC ("Gateway"), since October 2005. It is admitted

R&S 725908-1

2

Case 1:09-cv-00377-MR-DLH   Document 16   Filed 12/11/09   Page 2 of 13

that Dr. William Gray ("Dr. Gray") is the Manager and a minority-interest Member of the Hammocks. Except as admitted, denied.

14. Admitted.

15. It is admitted that the Hammocks and Gateway purchased the Property from RHI in October 2005. Except as admitted, denied.

16. Admitted.

17. Exhibit B to Plaintiff's Complaint is a document, the terms of which speak for themselves. Except as admitted, denied.

18. Upon information and belief, it is admitted that Sarah McCullough signed an application of insurance on October 15, 2008 at White Insurance Agency in Black Mountain, North Carolina. Upon information and belief, it is admitted that Ms. McCollough was the accountant for the Hammocks at that time. Upon information and belief, the producer of the insurance policy was Cheryl Reavis. Except as admitted, denied.

19. RHI is without sufficient information to admit or deny the allegations of Paragraph 19; and, therefore the same are denied.

20. Upon information and belief, admitted.

21. Exhibit D to Plaintiff's Complaint is a document, the terms of which speak for themselves. Except as admitted, denied.

22. Exhibit D to Plaintiff's Complaint is a document, the terms of which speak for themselves. Except as admitted, denied.

23. RHI is without sufficient information to admit or deny the allegations of Paragraph 23; and, therefore the same are denied.

24. It is admitted that the Notice of Hearing on Forecelosure of Deed of Trust was posted at the Property on November 5, 2008. Except as admitted, denied.

25. It is admitted that RHI filed a Notice of Trustee's Foreclosure Sale of Real Property with the Buncombe County Court on March 16, 2009 and that the sale was scheduled for April 16, 2009. Except as admitted, denied.

26. It is admitted that on or about March 19, 2009, one of the buildings on the Property, which was commonly known as "the Mansion," sustained damage as a result of a fire. RHI is without sufficient information to admit or deny the remaining allegations in Paragraph 26; and, therefore the same are denied.

27. RHI is without sufficient information to admit or deny the allegations in Paragraph 27; and therefore the same are denied.

28. Exhibit E to Plaintiff's Complaint is a document, the terms of which speak for themselves. Except as admitted, denied.

29. Admitted.

30. Upon information and belief, admitted.

31. Exhibit F to Plaintiff's Complaint is a document, the terms of which speak for themselves. Except as admitted, denied.

32. It is admitted that on September 11, 2009, counsel for RHI sent Harleysville a letter demanding coverage be provided to RHI as mortgagee. Except as admitted, denied.

## COUNT I – DECLARATORY RELIEF: RHI IS NOT A "MORTGAGEE" UNDER THE POLICY

1. The foregoing responses of Defendant's Answer are hereby restated as though fully set forth herein.

2. Denied.

3. Denied.

## FIRST AFFIRMATIVE DEFENSE
(Acceptance of premium payments)

Harleysville accepted RHI's mortgagor's application for insurance and payment of premiums for, upon information and belief, approximately one year. After receiving these payments, Harleysville recently sought to rescind the policy and has filed a Motion for Relief from the Automatic Stay in the Hammocks' Chapter 11 Bankruptcy proceeding, Case No. 09-10332, in order to initiate an Action for Declaratory Judgment in this Court. Plaintiff's claims are barred, in whole or in part, by the doctrines of equitable estoppel, waiver, laches, unclean hands, and/or ratification.

## SECOND AFFIRMATIVE DEFENSE

(Violation of N.C.G.S. § 58-44-15)

1. N.C.G.S. § 58-44-15 sets forth the standard policy provisions of every fire insurance policy in this State.

2. N.C.G.S. § 58-44-15 mandates as follows:

   "No policy or contract for fire insurance . . . shall be made, issued or delivered by any insurer or by any agent or representative thereof, on any property in this State, unless it conforms with all of the provisions, stipulations, agreements, and conditions of the policy form in subsection (c) of this section."

3. The policy form set out in N.C.G.S. § 58-44-15(c) requires that the insurers include a "Mortgage Clause" that list mortgagees and their mailing addresses above the signature line for the agent. This part of the policy form states as follows:

   "Mortgage Clause: Subject to the provision of the mortgage clause attached hereto, loss, if any, on building items, shall be payable to: INSERT NAME(S) OF MORTGAGEE(S) AND MAILING ADDRESS(ES)

   _____    _____    _____
   Countersignature Date         Agency at                    Agent"

(emphasis original)

4. A copy of the standard form is attached hereto as Exhibit A.

5. The Harleysville Policy attached as Exhibit A to Plaintiff's Complaint fails to contain the Mortgage Clause as required by N.C.G.S. § 58-44-15.

6. If the Policy had included a Mortgage Clause, as required by N.C.G.S. § 58-44-15, then it would have been readily apparent to the Hammocks that Harleysville had failed to identify RHI as the mortgagee and that fact would have been brought to the attention of Harleysville.

7. Because the Harleysville failed to include the mandatory Mortgage Clause, in violation of the statute, Harleysville should be equitably estopped from denying coverage to RHI.

**THIRD AFFIRMATIVE DEFENSE AND**

# COUNTERCLAIMS AGAINST HARLEYSVILLE

Without waiving its Motion to Transfer, NOW COMES Counterclaimant RHI, by and through its counsel, and brings this action against Counter-Defendant Harleysville Mutual Insurance Company ("Counter-Defendant Harleysville") for declaratory judgment and damages, complaining and alleging as follows:

## PARTIES

1. Counterclaimant RHI is incorporated in the State of North Carolina and has its principal place of business in Greensboro, North Carolina.

2. At all times relevant to the Counterclaim, RHI was a mortgagee for the Property described in the deeds recorded in Book 4124 at Page 1854 and in Book 4124 at Page 1866, Buncombe County Registry, located in Buncombe County, North Carolina (hereinafter, "the Property").

3. The Richmond Hill Inn Mansion is situated on the Property.

4. Counter-Defendant Harleysville is a corporation incorporated under the laws of the Commonwealth of Pennsylvania and has its principal place of business in Pennsylvania.

5. At all times relevant to the Counterclaim, Counter-Defendant Harleysville was the insurer for the Property.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over Counter-Defendant Harleysville pursuant to 28 U.S.C. § 1332(a) because the parties are diverse in citizenship and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interests and costs.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this district and the insured Property that is the subject of the action is located in this district.

8. This Court has personal jurisdiction over Harleysville under North Carolina's long arm statute, N.C.G.S. § 1-75, for the following reasons:

    a. This is action claiming injury to property within this State arising out of an act or omission within this State by the defendant;

b. Upon information and belief, Harleysville solicited business in this State and its insurance policies were issued in this State;
   c. Harleysville maintains a website at www.harleysvillegroup.com that, upon information and belief, attempts to attract customers and generate additional demand for Harleysville's insurance products in North Carolina and provides insurance product information available to customers in North Carolina;
   d. This is an action which arises out of a contract of insurance as set forth in N.C.G.S. § 1-75.4(10); and
   e. The exercise of such jurisdiction over Harleysville comports with the requirements of the Due Process Clause of the Fourteenth Amendment.

## FACTUAL BACKGROUND

9. The foregoing allegations of RHI's Defenses and Counterclaims are hereby restated as though fully set forth herein.

10. In October 2005, the Hammocks and Gateway purchased the Property from RHI.

11. The Deed conveying the Property from RHI to the Hammocks and Gateway is recorded at the Buncombe County Register of Deeds at Book 4124, pages 1854-57. A true and accurate copy of the Deed is attached hereto as Exhibit B and incorporated by reference.

12. On October 10, 2005, the Hammocks, LLC and Gateway Park Properties, LLC, executed a Deed of Trust naming RHI as the beneficiary.

13. The Deed of Trust was secured by the subject Property.

14. The Deed of Trust incorporates by reference a Purchase Money Promissory Note evidencing the Hammocks and Gateway's indebtedness to RHI in the original amount of $8,800,000.

15. The Deed of Trust is recorded at the Buncombe County Register of Deeds at Book 4124, pages 1858-65. A true and accurate copy of the Deed of Trust is attached hereto as Exhibit C and incorporated by reference.

16. The Deed of Trust contains the following terms regarding the Hammocks' obligation to carry insurance to protect the Property for RHI's benefit.

> "INSURANCE. Grantor shall keep all improvements on said land, now or hereafter erected, constantly insured for the benefit of the Beneficiary against lost by fire, windstorm and such other casualties

and contingencies, in such manner and in such companies and for such amounts, not less than that amount necessary to pay the sum secured by this Deed of Trust, and as may be satisfactory to the Beneficiary."

17. In October 2008, in exchange for good and valuable consideration, Harleysville Insurance issued the Hammocks a commercial insurance policy with policy number OF3M2977 and in effect for a policy term beginning October 19, 2008 and ending October 19, 2009 ("the Insurance Policy").

18. Upon information and belief, the information reported in the Harleysville insurance application was solicited and input by Harleysville's agents at White Insurance Agency.

19. White Insurance Agency is located at 17 Sunset Drive in Black Mountain, North Carolina.

20. White Insurance Agency is listed as an agent of Harleysville on Harleysville's website.

21. Upon information and belief, Cheryl Reavis is a producer and agent for Harleysville and White Insurance Agency.

22. Upon information and belief, Harleysville's agents, including Cheryl Reavis, were familiar with The Hammocks and/or the subject Property before the Harleysville policy was issued.

23. Under the Insurance Policy, Harleysville provided the Hammocks, among other coverages, more than $13.2 million in fire insurance on the Mansion, the buildings, and personal property on the Property and an additional $3 million in "income coverage" insuring the Hammocks against lost income and extra expenses resulting from a fire loss.

24. The Insurance Policy further insured the Mansion against fire loss at its "agreed value," $5,089,119.00, with a $10,000.00 deductible; insured the personal property on the Property against fire damage at its "agreed value," $1,500,000.00, with a $10,000.00 deductible; provided $50,000.00 in insurance coverage for debris removal; and provided $3,000,000.00 in coverage insuring rents and earnings lost and extra expenses incurred by reason of a fire.

25. On or about March 19, 2009, at which time the Insurance Policy remained in full force and effect, fire destroyed most of the Mansion and damaged or destroyed personal property in and around the Mansion.

26. Upon information and belief, the Hammocks promptly notified Harleysville Insurance of the fire and the resulting losses to the Mansion and the personal property in and around the Mansion.

27. The Hammocks filed its Chapter 11 bankruptcy proceeding on or about March 25, 2009.

28. At all times relevant to the Counterclaim, Harleysville was an insurer as that term is defined under Chapter 58 of the North Carolina General Statutes.

29. At all times relevant to the Complaint, RHI was a mortgagee.

30. On September 11, 2009, the undersigned sent a letter to counsel for Harleysville demanding coverage for RHI's claim for the insurance proceeds covering its mortgagee interest in the Property, and specifically the Mansion. Harleysville has refused coverage.

## FIRST COUNTERCLAIM
## DECLARATORY RELIEF: THAT RHI IS ENTITLED
## TO INSURANCE COVERAGE UNDER N.C.G.S. § 58-43-15

1. The foregoing allegations of RHI's Defenses and Counterclaims are hereby restated as though fully set forth herein.

2. The Harleysville policy is a fire insurance policy as that term is used in N.C.G.S. §§ 58-43-1, *et seq* and 58-44-1, *et seq*.

3. N.C.G.S. § 58-43-15 ("Policies for the benefit of mortgagees") applies to contracts for fire insurance.

4. N.C.G.S. § 58-43-15 provides in part as follows:

> <u>Where by an agreement with the insured [the Hammocks],</u> or by the terms of a fire insurance policy taken out by the insured [the Hammocks], the whole or any part of the loss thereon is payable to a mortgagee [RHI] of the property for his benefit, the company [Harleysville] shall, upon satisfactory proof of the rights and title of the parties, in accordance with such terms or agreement, pay all mortgagees [RHI] protected by such policy in the order of their priority of claim, as their claims appear, not beyond the amount for which the company [Harleysville] is liable, and such payments are,

> to the extent thereof, payment and satisfaction of the liabilities of the company [Harleysville] under the policy.
> (alternations in brackets) (emphasis added)

5. Under N.C.G.S. § 58-43-15, an insurance company is obligated to make payment to a mortgagee following a loss in two circumstances: (1) where there is an agreement between the mortgagor and mortgagee to that effect; <u>or</u> (2) where the mortgagee is listed as a loss payee under the terms of the insurance policy.

6. Harleysville is required to pay RHI insurance proceeds associated with the destruction of the Mansion because RHI, the Hammocks, and Gateway Park Properties, entered into "an agreement" in the deed of trust dated October 10, 2005 which required the Hammocks and Gateway to have fire insurance and required that all proceeds from any insurance be applied to the debt owed to RHI.

7. Therefore, RHI respectfully requests the Court for a declaratory judgment that it is entitled to coverage from Harleysville under the Insurance Policy as required by N.C.G.S. § 58-43-15.

## SECOND COUNTERCLAIM
## EQUITABLE LIEN

In the event it is determined that RHI is not covered by the Harleysville Policy, RHI by and through its counsel, brings this Counterclaim against Harleysville complaining and alleging as follows:

1. The foregoing allegations of RHI's Defenses and Counterclaims are hereby restated as though fully set forth herein.

2. Counter-Defendant Harleysville issued a policy of insurance for Property valued at $5,089,119.00.

3. Because the Deed of Trust required the Hammocks and Gateway to insure the subject Property for the benefit of RHI, any failure by the Hammocks and Gateway to identify RHI as a loss payee under the Policy created an equitable lien on the insurance proceeds.

4. RHI is entitled to an equitable lien in the amount of its mortgagee interest.

## THIRD COUNTERCLAIM
## NEGLIGENCE OF HARLEYSVILLE

In the event it is determined that RHI is not covered by the Harleysville Policy, RHI by and through its counsel, brings this Counterclaim against Harleysville complaining and alleging as follows:

1. The foregoing allegations of RHI's Defenses and Counterclaims are hereby restated as though fully set forth herein.

2. Under the Policy, Harleysville agreed that the insured value of the Mansion was $5,089,119.00.

3. Harleysville's agent(s) had a duty to use reasonable diligence to procure a proper insurance policy requested for the subject Property, including the Mansion. Harleysville's agent(s) specifically had a duty to inquire about encumbrances on the Property.

4. Upon information and belief, Harleysville's agent(s) failed to make reasonable inquiries about any mortgagees for the Property when processing the application for the Harleysville policy and granting it.

5. Upon information and belief, Harleysville's agent(s), White Insurance and/or Cheryl Reavis, knew or should have known about RHI's mortgagee interest on the Property.

6. It was foreseeable to Harleysville and its agent(s) that there would be a mortgagee or loss payee for the Property.

7. Harleysville and its agents failed to list any mortgagees for the Property when processing and granting the application.

8. Harleysville's act of issuing the Policy ratified its agents' acts in failing to make reasonable inquiries about mortgagees on the Property and in failing to identify mortgagees of which its agent(s) were aware or should have been aware.

9. Harleysville and its agent(s) were negligent in failing to make reasonable inquiries about mortgagees on the Property and in failing to identify mortgagees of which its agent(s) were aware or should have been aware.

10. Because Harleysville knew or should have known of RHI's mortgagee interest in the subject Property, Harleysville owed a duty of care to protect the interest of RHI.

11. Harleysville has unreasonably refused to pay RHI's claim for the fire insurance proceeds.

12. Harleysville's negligence proximately caused RHI's damages in the amount of the mortgage secured by the Deed of Trust.

**WHEREFORE**, Defendant prays the Court as follows:

1. That Plaintiff have and recover nothing of this Defendant;

2. That this Court transfer this action to the United States Bankruptcy Court for the Western District of North Carolina and consolidate it with Case No. 09-10332;

3. That this Court (or the Bankruptcy Court) declare that RHI is entitled to insurance proceeds from Harleysville under the Policy for the loss of the Mansion;

4. That in the alternative this Court (or the Bankruptcy Court) award damages to RHI for the negligence of Harleysville and its agent(s) in failing to protect its interests;

5. That the costs of the above-captioned action, including attorney' fees, be taxed against Plaintiff; and
6. For such othe

7. For such other and further relief as the Court deems just and reasonable.

This the 11th day of December, 2009.

>s/ Wyatt S. Stevens
>NC State Bar No. 21056
>Ann-Patton Hornthal
>NC State Bar No. 35477
>ROBERTS & STEVENS, P.A.
>P.O. Box 7647
>Asheville, NC 28801
>Telephone: (828) 258-6992
>Facsimile: (828) 253-7200
>E-mail: wstevens@roberts-stevens.com
>aphornthal@roberts-stevens.com

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Answer was served upon the following attorney(s) by notice of electronic filing through the CM/ECF system/electronic mail:

| | |
|---|---|
| Mr. David Brown | Mr. Michael R. Nelson |
| Mr. Brady Yntema | Nelson, Levine, deLuca & Horst, LLC |
| Pinto, Coates Kyre & Brown | 518 Township Line Rd., Suite 300 |
| 3202 Brassfield Road | Blue Bell, PA 19422 |
| Greensboro, NC 27410 | Telephone: (215)358-5160 |
| Telephone: (336)282-8848 | Facsimile: (215)358-5101 |
| Facsimile: (336)282-8409 | mnelson@nlehlaw.com |
| E-Mail: dbrown@pckb-law.com | |
| E-Mail: byntema@pckb-law.com | |

Mr. Douglas Y. Christian
Ballard, Spahr, Andrews & Ingersoll, LLP
1735 market Street – 51st Floor
Philadelphia, PA 19103-7599
Telephone: (215)665-8500
Facsimile Transmission: (215)864-8999
christiand@ballardspahr.com

This the 11th day of December, 2009.

> s/Wyatt S. Stevens
> wstevens@roberts-stevens.com