IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:09CV377

HARLEYSVILLE MUTUAL INSURANCE          )
COMPANY,                               )
                                       )   **PLAINTIFF HARLEYSVILLE MUTUAL**
                  Plaintiff,           )   **INSURANCE COMPANY'S**
vs.                                    )   **MEMORANDUM OF LAW IN**
                                       )   **OPPOSITION TO DEFENDANT**
RICHMOND HILL, INC.,                   )   **RICHMOND HILL, INC.'S MOTION TO**
                                       )   **TRANSFER**
                  Defendant.           )
                                       )

   Plaintiff Harleysville Mutual Insurance Company ("Harleysville") hereby submits

this Memorandum of Law in Opposition to Defendant Richmond Hill, Inc.'s ("RHI") Motion to

Transfer (the "Transfer Motion") and Brief.

<u>INTRODUCTION</u>

   In this action Harleysville seeks a declaratory judgment that RHI is not entitled to

payment under an insurance policy (the "Policy") issued by Harleysville to The Hammocks, LLC

("The Hammocks").  RHI is not identified as a mortgagee on the Policy and therefore is not

entitled to coverage under the Policy as a mortgagee.

   RHI's Transfer Motion seeks an order transferring this declaratory judgment

action to the United States Bankruptcy Court for the Western District of North Carolina so that it

will be litigated in the context of the Chapter 11 bankruptcy action commenced on March 25,

2009 by The Hammocks in Case No. 09-10332 (the "Bankruptcy Action").  RHI seeks this

transfer asserting that this action is a core proceeding or, if not, a proceeding related to the

Bankruptcy Action.  RHI's position is, simply put, wrong, and RHI is not entitled to the relief it

seeks in the Transfer Motion.  Specifically, RHI cannot meet its burden of establishing that the

transfer is appropriate or that Harleysville's choice of this forum should be disturbed.

DMEAST #12091445 v1

Harleysville's motion for a declaratory judgment against RHI is not a core proceeding because it (i) does not invoke a substantive right provided by title 11 or involve any rights of the debtor in the Bankruptcy Action, (ii) raises traditional state law claims that arise outside of a bankruptcy case, including without limitation, RHI's counterclaim against Harleysville for negligence, which allows for a jury trial that the bankruptcy court cannot provide, and (iii) seeks to resolve claims regarding pre-petition rights under a contract. All of these claims are controlled by North Carolina state law, which governs the pre-petition insurance policy in dispute.

RHI concedes that a bankruptcy court's power to hear and determine proceedings under section 157(b) is limited to "cases arising in or related to a title 11 case and all core proceedings arising under title 11." RHI's Brief at 4. Harleysville's motion for a declaratory judgment against RHI does not involve a substantive right created by federal bankruptcy law. It thus does not arise under title 11. Nor is this proceeding one that, by its nature, could arise only in the context of a bankruptcy case. Thus, it does not arise in a case under title 11. As discussed generally in *Humboldt Express Inc. v. The Wise Co., Inc. (In re Apex Express Corp.)*, 190 F.3d 624, 631-32 (4th Cir. 1999), the Fourth Circuit explained that accounts receivable and contracts claims involving third parties to a bankruptcy proceeding are treated as non-core when arising pre-petition and grounded in state law, Harleysville's request for a declaratory judgment against RHI and RHI's counterclaims thereto constitute a non-core proceeding. This action is a dispute between an insurer and an entity which asserts an interest in an insurance policy. It is not the type of dispute that belongs in bankruptcy court.

This District Court should decline to transfer this action to the Bankruptcy Court for the following reasons:

DMEAST #12091445 v1

First, RHI contends that it is entitled to receive the proceeds of the Policy. The Hammocks is not a party to this action and RHI is not seeking policy proceeds on behalf of The Hammocks or anyone but itself.

Second, RHI cannot and does not meet its burden of establishing that the transfer is appropriate, or that Harleysville's choice of this forum should be disturbed. Moreover, it makes no sense to transfer this action to the Bankruptcy Court because it is more efficient for the District Court to retain jurisdiction. Specifically, Harleysville does not consent to the Bankruptcy Court issuing final orders in this declaratory judgment action or in the Adversary Proceeding, and Harleysville is entitled to a jury trial to be conducted in the District Court on RHI's negligence counterclaims and the Adversary Proceeding claims. Therefore, the withdrawal of reference as to the Adversary Proceeding and retention of jurisdiction over this declaratory judgment action promote uniformity and efficiency with respect to all actions involving Harleysville, RHI, and The Hammocks.

<u>FACTS</u>

On October 5, 2009, Harleysville filed in this Court its declaratory judgment complaint ("Harleysville's RHI Complaint") against RHI (the "RHI Action"). As set forth in Harleysville's RHI Complaint, in October 2008, Harleysville issued the Policy to The Hammocks that provided coverage for The Hammocks' business known as the Richmond Hill Inn ("Richmond Hill Inn Property"). (RHI Action – Doc. 1; Harleysville's RHI Complaint ¶ 6). RHI was not named in the Policy or the Policy application.

On or about March 19, 2009, one of the buildings on the Richmond Hill Inn Property that was commonly known as "the Mansion" sustained damages as a result of a fire. (*Id.* ¶ 26).

3

On March 25, 2009, The Hammocks commenced the Bankruptcy Action by filing a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code (the "Petition"). As of the date of this Memorandum, The Hammocks continues to manage its assets and affairs as debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code, and no trustee has been appointed in the Bankruptcy Action.

On May 29, 2009, The Hammocks submitted a purported proof of loss to Harleysville under the Policy (the "Fire Loss"). (*Id.* ¶ 27).

On September 11, 2009, notwithstanding the fact that the Policy does not list RHI, or anyone else, as a mortgagee and that the sworn application for insurance submitted to Harleysville on or about October 15, 2008 does not reference any mortgagee's interest, counsel for RHI sent a letter to counsel for Harleysville demanding coverage be provided to RHI as a mortgagee under the Policy. (*Id.* ¶¶ 18, 32).

Harleysville learned after the March 19, 2009 fire that RHI is a mortgagee holding a secured interest in the Richmond Hill Inn Property pursuant to a deed of trust and promissory note entered into by RHI and The Hammocks on October 10, 2005, for a loan of $8.8 million. (*Id.* ¶¶ 15-17). In the RHI Action, Harleysville requests a ruling that RHI has no rights under the Policy because it is not named in the Policy as a mortgagee.

On October 5, 2009, Harleysville filed a Motion for Relief from the Automatic Stay to pursue a declaratory judgment action against The Hammocks in the United States District Court for the Western District of North Carolina to determine the rights and obligations of Harleysville and The Hammocks under the Policy with respect to the Fire Loss. (Bankruptcy Action – Doc. 68).

DMEAST #12091445 v1

On October 28, 2009, the Bankruptcy Court denied Harleysville's Motion for Relief from the Automatic Stay and allowed The Hammocks until January 20, 2010, to file a "civil action" against Harleysville ("Order"). (Bankruptcy Action – Doc. 82). Harleysville appealed the Order to the Western District of North Carolina (Bankruptcy Action – Doc. 86). The appeal is currently pending and was formally docketed by the District Court on December 16, 2009. Harleysville's appeal brief is due on or before January 4, 2010, and The Hammocks' brief is due on or before January 19, 2010. (District Court case number 1:09-cv-00411-MR – Doc. 9). One of the issues involved in that appeal is whether the insurance dispute between Harleysville and The Hammocks is a core proceeding.

On December 2, 2009, The Hammocks initiated its Adversary Proceeding by filing a Complaint alleging claims of breach of contract, bad faith, and unfair and deceptive trade practices against Harleysville. (Bankruptcy Action - Doc. 116). In the Adversary Proceeding, The Hammocks seeks to recover from Harleysville compensatory damages of "$6,021,563.00, together with interest" for breach of contract along with extra-contractual damages for alleged bad faith and unfair and deceptive trade practices. *Id.*

On December 11, 2009, RHI filed an Answer to Harleysville's RHI Complaint, Counterclaims against Harleysville, and the Transfer Motion. (RHI Action – Docs. 16, 17). RHI asserts three Counterclaims against Harleysville: (1) declaratory relief that RHI is entitled to insurance coverage, (2) equitable lien on the Policy's insurance proceeds, and (3) negligence. (RHI Action – Doc. 16). In its First Counterclaim, RHI alleges that The Hammocks agreed in its October 10, 2005 deed of trust to maintain fire insurance on the Richmond Hill Inn Property, and that Harleysville is thus statutorily required to afford coverage to RHI under N.C.G.S. § 58-43-15. In its Second Counterclaim, RHI alternatively alleges that if it is not covered by the Policy,

it is nonetheless entitled to an equitable lien on insurance proceeds as a result of any failure by The Hammocks to identify RHI as a loss payee under the Policy. In its Third Counterclaim, RHI alternatively alleges that if it is not covered by the Policy because it is not identified as a mortgagee, it should nonetheless be entitled to coverage due to Harleysville's agent's alleged negligence in failing to identify RHI's mortgagee interest prior to issuing the Policy. All of RHI's Counterclaims involve prepetition conduct. At the very least, the negligence claim and corresponding demand for millions of dollars in damages entitle Harleysville to a jury trial on that claim. (*Id.* – Doc. 16).

Contemporaneous with the filing of this Memorandum opposing RHI's Transfer Motion, Harleysville is filing a Motion to Withdraw the Reference as to the Adversary Proceeding filed by The Hammocks so that litigation of that matter and the RHI Action may proceed in the District Court. Harleysville is also filing with the Bankruptcy Court a Motion to Stay the Adversary Proceeding so as to permit the District Court time to rule on the Motion to Withdraw the Reference before a response is due to the Adversary Proceeding.[1] Harleysville is

---

[1]    Harleysville's rights will be detrimentally affected if the Adversary Proceeding is not stayed pending an order on this Motion. Harleysville has a right to and intends to assert a counterclaim against The Hammocks that may be considered compulsory and waived if the counterclaim is not asserted with Harleysville's answer. However, by asserting and preserving the counterclaim against The Hammocks in the Adversary Proceeding, Harleysville may in effect waive its right to a jury trial. *See In re Robin Hood, Inc*., 192 B.R. 124 (W.D.N.C. 1995) (where debtor files an adversary proceeding against a creditor that has not filed a proof of claim and that creditor then files a counterclaim, that creditor has succumbed to the jurisdiction of the bankruptcy court and waived its right to a jury trial); *In re Hudson*, 170 B.R. 868 (E.D.N.C. 1994) (same). Therefore, a stay of the Adversary Proceeding is necessary to protect Harleysville's rights. Harleysville argues that the proper route is to allow a stay of the Adversary Proceeding until an Order is entered regarding its Motion to Withdraw Reference. After such Order is entered, Harleysville may then proceed to assert its counterclaim in the District Court without waiving its rights to a jury trial.

DMEAST #12091445 v1

also filing an Answer to RHI's Counterclaims in which Harleysville requests the jury trial to which it is entitled on RHI's counterclaims.

In its Answer to the Adversary Proceeding, whether filed in the Bankruptcy Court or the District Court, Harleysville will demand the jury trial to which it is entitled. Accordingly, Harleysville will have demanded jury trials in both the Adversary Proceeding and this action. Harleysville represents that it will demand a jury trial in both actions.

Harleysville has not submitted a proof of claim in the Bankruptcy Action, and it has neither subjected itself to the Bankruptcy Court's jurisdiction nor waived its right to a jury trial with respect to all claims asserted in and defenses to the Adversary Proceeding. Harleysville does not consent to trial by jury of either the Adversary Proceeding or this action in the Bankruptcy Court.

## ARGUMENT

## I. This Dispute Between Harleysville And RHI Over A Prepetition Contract And Tort Counterclaims Is Not A Core Proceeding

### A. This Declaratory Judgment Action Is Not A Core Proceeding Under The Statutory Test In 28 U.S.C. § 157(b)

This declaratory judgment action is not a core proceeding under the statutory test Congress enacted in response to *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 71 (1982). In *Marathon*, the Supreme Court held that a non-Article III court lacks the power to issue final orders without the consent of the litigants. The Court explained that "the restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power, must be distinguished from the adjudication of state-created private rights, such as the right to recover contract damages." *Id.* at 71. Providing Congress and the lower courts with guidance regarding the limits of bankruptcy courts' jurisdiction, the Court stressed that the adjudication of "right[s] created by state law, right[s] independent of and antecedent to the reorganization

7

petition that confer[s] jurisdiction on the Bankruptcy Court" is properly the province of Article III courts. *Id.* at 84.

Congress enacted 28 U.S.C. § 157 in direct response to *Marathon*. Section 157 categorizes all proceedings as core or non-core.

> **1.** **Under 28 U.S.C. § 157(b) A Proceeding Is Core Only If It (i) Invokes A Substantive Right Under The Federal Bankruptcy Laws Or (ii) Is Of A Nature That Could Arise Only In A Bankruptcy Case**

Core proceedings are those either "arising under title 11, or arising in a case under title 11." 28 U.S.C. § 157(b)(1); *accord* RHI's Brief at 4. A proceeding is core "'if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.'" *In re Millennium Studios, Inc.*, 286 B.R. 300, 305 (D. Md. 2002) (ruling that pre-petition, state-based breach of contract claims were "non-core" despite possible significance of those claims to the administration of the bankruptcy estate) (quoting *In re Wood*, 825 F.2d 90, 97 (5th Cir. 1987)).

This requirement, that a core proceeding must either (i) invoke a substantive bankruptcy right or (ii) be of a nature that could arise only in the context of a bankruptcy case, ensures that jurisdiction is exercised in a manner consistent with *Marathon*:

> [A] proceeding is core [1] if it invokes a substantive right provided by title 11 or [2] if it is a proceeding, that by its nature, could arise only in the context of a bankruptcy case. This Court and other courts of appeals have relied on this test to ensure that § 157(b) core proceeding jurisdiction is exercised in a manner consistent with *Marathon*.

*Halper v. Halper*, 164 F.3d 830, 836 (3d Cir. 1999) (internal quotation marks and citations omitted). Courts including those within the Fourth Circuit have essentially universally adopted this test. *See In re Nichols & Assocs. Tryon Properties*, 1994 U.S. App. LEXIS 25529, at *9 (4th Cir. Sept. 14, 1994) ("Core proceedings [] must 'arise in' or 'arise under' a title 11 case.") (citing

*In re Wood*, 825 F.2d 90, 96 (5th Cir. 1987)); *Fed. Ins. Co. v. Parnell (In re Peanut Corp. of Am.)*, 407 B.R. 862, 865 (W.D. Va. 2009) ("In general, 'a proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.') (quoting *In re U.S. Airways Group, Inc.*, 296 B.R. 673, 682 (E.D. Va. 2003) (quoting *In re Wood*, 825 F.2d 90, 97 (5th Cir. 1987))); *see also In re U.S. Brass Corp.*, 301 F.3d 296, 304 (5th Cir. 2002) (explaining that "a proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case"); *Security Farms v. Int'l Bhd. Of Teamsters, Chauffeurs, Warehouseman & Helpers*, 124 F.3d 999, 1008 (9th Cir. 1997) ("Actions that do not depend on bankruptcy laws for their existence and that could proceed in another court are considered 'non-core.'"); *Specialty Mills, Inc. v. Citizens State Bank*, 51 F.3d 770, 773 (8th Cir. 1995) ("Core proceedings under 28 U.S.C. § 157 are those which arise only in bankruptcy or involve a right created by federal bankruptcy law."); *Sanders Confectionary Prods. v. Heller Fin., Inc.*, 973 F.2d 474, 483 (6th Cir. 1992) ("A core proceeding either invokes a substantive right created by federal bankruptcy law or [is] one which could not exist outside of the bankruptcy."); *In re Gardner*, 913 F.2d 1515, 1518 (10th Cir. 1990) ("Actions which do not depend on the bankruptcy laws for their existence and which could proceed in another court are not core proceedings.").

### 2. This Contract Action With Tort Counterclaims Does Not Invoke Substantive Bankruptcy Rights And Is Not Unique To Bankruptcy

This declaratory judgment action and RHI's counterclaims thereto raise conventional state law questions that are routinely decided by District Courts. Harleysville's action and RHI's counterclaims involve a prepetition contract and prepetition conduct, and thus arose prepetition. The Policy is a prepetition contract because its stated Policy period ran from

October 19, 2008, five months before The Hammocks filed its Petition.  (RHI Action – Doc. 1; Harleysville's RHI Complaint ¶ 8).  In its Declaratory Judgment Complaint, Harleysville emphasizes that RHI is not entitled to insured status as a mortgagee because the Policy does not identify RHI as a mortgagee.  (*Id.* ¶ 12).  Nor did The Hammocks identify RHI as a mortgagee on its sworn insurance application submitted on October 15, 2008.  (*Id.* ¶ 18).  In addition, the arson fire that damaged the Richmond Hill Inn Property was set on March 19, 2009, more than a week before the Petition was filed.  (*Id.* ¶¶ 26-28).  Likewise, RHI's tort counterclaim asserts that Harleysville's agent was negligent in failing to identify RHI's mortgagee interest prior to issuing the October 19, 2008 Policy (RHI Action – Doc. 16 Third Counterclaim).  The claims asserted in Harleysville's Declaratory Judgment Complaint and RHI's Counterclaims are thus non-core:  "It seems self-evident that a claim, like the Debtor's breach of contract claim, that pre-dates the filing of the Chapter 11 case cannot be said to have arisen within that case."  *Valley Historic Ltd. P'ship v. Bank of New York*, 486 F.3d 831, 835 (4th Cir. 2007); *see also id.* ("It follows that because the Debtor's breach of contract claim and tortious interference claim would have existence outside of the bankruptcy, they were not within the bankruptcy court's 'arising in' jurisdiction.").

This action does not invoke substantive bankruptcy rights and so does not arise under title 11.  Nor are the asserted claims unique to bankruptcy proceedings or uniquely affected by The Hammocks' Bankruptcy Action.

At page 5 of its Brief, RHI cites three subsections of section 157(b)(2) as supposedly relevant:  sections 157(b)(2)(A)("matters concerning the administration of the estate"), (K)("determinations as to the dischargeability of particular debts"), and (O)("other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-

DMEAST #12091445 v1

creditor or the equity security holder relationship."). None applies. In *Humboldt Express Inc. v. The Wise Co., Inc. (In re Apex Express Corp.)*, the Fourth Circuit explained that:

> the logic used by the courts which would treat 'accounts receivable' and other basically contract claims as 'core' proves too much. The main justification supplied by these courts is that because the accounts receivable are in some sense the property of the bankruptcy estate (by altering its size), then the claims are 'core." [citations omitted]. But, under this logic any claim involving a potential money judgment would be considered core, even the precise contract claim at issue in *Northern Pipeline* [*Marathon*]. Thus, the rationale used by these courts would swallow the rule established by *Northern Pipeline* [*Marathon*].

190 F.3d 624, 631-32 (4th Cir. 1999) (citing *In re Orion Pictures Corp.*, 4 F.3d 1095, 1102 (2d Cir. 1993) (to treat pre-petition contract claims as core proceedings under §§ 157(b)(2)(A) or (O) "creates an exception to *Northern Pipeline* that would swallow the rule.")).

Similarly, in *In re Nichols & Associates Tryon Properties*, the Fourth Circuit held that an adversary proceeding filed by debtors seeking insurance policy proceeds after their mall was destroyed by fire was a non-core proceeding. 1994 U.S. App. LEXIS 25529, at *10 (4th Cir. Sept. 14, 1994) ("Because the adversary proceeding at issue here is 'otherwise related to' the Nichols bankruptcy, i.e., not one which 'arises in' or 'arises under' the title 11 case, we find that it is a non-core proceeding.").

Two other district and bankruptcy courts within the Fourth Circuit have ruled that a dispute over payment of insurance policy proceeds is not transformed into a core proceeding merely because the outcome may have an impact on the administration of the estate. *See Porter-Hayden Co. v. First State Mgmt. Group, Inc. (In re Porter-Hayden Co.)*, 304 B.R. 725, 731 (Bankr. D. Md. 2004):

> Here, Plaintiff's contract claim is grounded in state law (not rights created by federal bankruptcy law), and arises from various pre-petition contracts with Defendant, namely, its insurance contracts covering asbestos-related liabilities and the Wellington Agreement.

DMEAST #12091445 v1

Defendant has not filed a proof of claim, and thus it has not consented to the jurisdiction of this court. It is conceivable that a resolution of the contract dispute with Defendant may have an impact on the administration of the estate. However, treating this contract dispute as a "core proceeding" would create an exception to *Marathon* that would "swallow the rule," as any contract action that the Plaintiff would pursue against a defendant would likely be expected to inure to the benefit of the estate and thus "concern" its "administration." *See Apex, 190 F.3d at 632*. Moreover, inasmuch as the parties have already submitted their dispute concerning Defendant's refusal to make liability payments to Plaintiff to the ADR proceeding, the claim, while related to Plaintiff's bankruptcy, is not one that could arise only in the context of a bankruptcy nor one that has an exclusive connection to a public right of debtor-creditor relations. These considerations militate against a finding that Plaintiff's contract claim is "core" to the bankruptcy, and the court so concludes.

Likewise, in *In re Peanut Corp. of America*, 407 B.R. 862, 865 (W.D. Va. 2009), an interpleader adversary action brought to determine the allocation of proceeds under a directors and officers insurance policy was non-core because "[i]t does not invoke a substantive right provided by title 11, nor is it a proceeding that could arise only in the context of a bankruptcy case. And because it does not involve issues uniquely related to bankruptcy law, the interpleader action could clearly proceed in a forum outside Bankruptcy Court."  Thus, the court explained that "[r]eading *28 U.S.C. § 157(b)(2)(A) and (O)* as broadly as the Trustee suggests could result in almost every conceivable adversary proceeding filed in Chapter 7 bankruptcy being treated as a core claim."

RHI has failed to cite a single Fourth Circuit or district court case arising within the Fourth Circuit in support of its claim that the prepetition state law contract issues raised by this declaratory judgment action are core.  The sole bankruptcy court cases arising within the Fourth Circuit that RHI cites are distinguishable from and inapposite to the holdings in *In re Apex Express Corp.*, *In re Nichols & Associates Tryon Properties*, *In re Porter-Hayden Co.*, and *In re Peanut Corp. of America*:

*In re Moore*, 54 B.R. 781, 783 (Bankr. E.D.N.C. 1985), relied on by RHI at page 6 of its Brief, was issued years before *In re Apex Express Corp.* and other authorities cited by Harleysville, and is distinguishable on several grounds, including that it involved an adversary proceeding brought against Chapter 11 debtors. Here, on the other hand, the debtor in the Bankruptcy Action is not a party to this declaratory judgment action.

*Cooper v. BB Syndication Services*, 409 B.R. 770, 782 (Bankr. W.D.N.C. 2009), relied on by RHI at pages 6-7 of its Brief, is also distinguishable on several grounds, including that the case (1) involved an adversary proceeding commenced in bankruptcy court, (2) in which the debtor was directly involved as a party, (3) pertaining to a determination of interests in the debtor's construction project, and (4) none of the parties objected to the bankruptcy court's subject matter jurisdiction at the inception of the adversary proceeding (once jurisdiction exists, subsequent events do not divest the bankruptcy court of its jurisdiction). In addition, the court ruled that the adversary proceeding was core under several subsections of section 157(b) not raised here, including sections 157(b)(2)(B), (M), & (N). *See id.* at 783.

### B. *Marathon* And The Fourth Circuit's *In re Apex Express Corp.* Decision Mandate Resolution Of This Action By An Article III Court

This action, must be resolved by an Article III court for the reasons set forth in *Marathon*. 458 U.S. at 84. *Marathon* explained that "right[s] created by state law, right[s] independent of and antecedent to the reorganization petition that confer[s] jurisdiction on the Bankruptcy Court" must be resolved by Article III courts. *Id.* The Fourth Circuit has also recognized the central holding of Marathon that claims "grounded in state law and arising pre-petition must be treated as noncore." *In re Apex Express Corp.*, 190 F.3d 624, 631 (4th Cir. 1999) (collecting cases).

DMEAST #12091445 v1

Under *Marathon* and *In re Apex Express Corp.*, this dispute cannot be decided by a non-Article III Court. It is a traditional contract action over a claim that arose pre-petition and involving the pre-petition Policy and pre-petition conduct. It arises under North Carolina state law. It does not invoke a substantive right under the federal bankruptcy laws. It is not the type of proceeding that could only arise in a bankruptcy case; to the contrary, just as in *In re Porter-Hayden Co.* where the dispute had already been submitted to an ADR proceeding, this action has been commenced in this District Court, demonstrating that it is independent of the bankruptcy context. *See Valley Historic Ltd. P'ship*, 486 F.3d at 836 ("Here, the Debtor's claims bear only a coincidental relationship to the Debtor's bankruptcy case. They would have existed whether or not the Debtor filed bankruptcy. It follows that because the Debtor's breach of contract claim and tortious interference claim would have existence outside of the bankruptcy, they were not within the bankruptcy court's 'arising in' jurisdiction."). Moreover, Harleysville has not filed a proof of claim in the Bankruptcy Action. Rather, Harleysville has objected to the Bankruptcy Court's subject matter jurisdiction over the Adversary Proceeding against Harleysville and filed a Motion to Withdraw the Reference with the District Court. And Harleysville does not consent to entry of a final order by the Bankruptcy Court with respect to this declaratory judgment action or the Adversary Proceeding.

DMEAST #12091445 v1

### C. This Court Should Retain Jurisdiction Over Harleysville's Declaratory Judgment Action

In addition to the foregoing reasons, this Court should further decline to transfer this action to the Bankruptcy Court because (1) RHI contends that it, rather than the debtor, is entitled to receive the proceeds of the Policy, and because (2) because this action is a non-core proceeding, it would be more efficient for the District Court to retain jurisdiction, particularly in light of Harleysville's right to a jury trial that cannot be provided in the Bankruptcy Court.

#### 1. RHI Asserts That RHI, Not Debtor, Should Receive Any Money Recovered From Harleysville In This Action

RHI does not seek to recover proceeds in this action for the benefit of The Hammocks' bankruptcy estate. Indeed, the heart of RHI's claim is that Harleysville has an independent obligation to make payment to a mortgagee which is not identified on the insurance policy.

Under section 541(a) of the Bankruptcy Code, "property of the estate" is defined as "all legal or equitable interests of the debtor in the property as of the commencement of the case." Although the Policy may be property of the Estate, RHI contends that any proceeds of the Policy should be paid to RHI as an insured. RHI is not seeking policy proceeds on behalf of the Estate or arguing that the Estate has an equitable interest in any such proceeds.

The Fifth Circuit in *Houston v. Edgeworth*, 993 F.2d 51 (5th Cir. 1993) explained that the "overriding question when determining whether insurance proceeds are property of the estate is whether the debtor would have a right to receive and keep those proceeds when the insurer paid a claim. When a payment by the insurer cannot inure to the debtor's pecuniary benefit, then that payment should neither enhance nor decrease the bankruptcy estate." *Id.* at 55-56, *see also id.* at 56 (holding that proceeds of insurance policies such as fire insurance policies "if made payable to the debtor rather than a third party such as a creditor, are property of the

15

estate and may inure to all bankruptcy policies," and implying that if not made payable to the debtor (as with the typical liability policy), "the debtor will not have a cognizable interest in the proceeds of the policy.").

Relying on *Edgeworth*, the Bankruptcy Court for the Middle District of North Carolina rejected a bankruptcy trustee's arguments that policy proceeds were the equitable property of the estate and granted relief from an automatic stay to allow tort claimants to seek policy proceeds in the district court because their potential recovery of proceeds would have no secondary effects on the bankruptcy case. *See In re Doug Baity Trucking, Inc.*, No. 04-13547, 2005 Bankr. LEXIS 1099, at \*26 (Bankr. M.D.N.C. Apr. 21, 2005); *see also Felder v. American Gen. Fin., Inc. (In re Felder)*, No. 97-05465-b, Adversary No. 98-80146, 2000 Bankr. LEXIS 1257, at \*37 n.6 (Bankr. D.S.C. July 7, 2000) ("assigned insurance proceeds are not property of the debtor's in bankruptcy estate because they neither enhance nor decrease the estate.").

### 2. RHI Cannot Meet Its Burden Of Establishing That Transfer Is Appropriate Under 28 U.S.C. § 1412 or 28 U.S.C. § 1404(a)

RHI seeks to transfer this action to the Bankruptcy Court under either 28 U.S.C. § 1412 or 28 U.S.C. § 1404(a). "Under either venue statute, transfer is discretionary and the moving party must establish its burden by a preponderance of the evidence." *Shaver v. Orthodontic Ctrs. of Colo., Inc.*, No. 06-c-00151-WYD-CBS, 2007 U.S. Dist. LEXIS 560, at \*6 (D. Colo. Jan. 4, 2007) (denying motion to transfer pre-petition breach of contract action where an underlying bankruptcy case was pending because defendants failed to show that a transfer was justified in the interest of justice or convenience, and holding that presumption that proper venue for proceeding is the district in which the bankruptcy case is pending was negated by the equally strong presumption in favor of the plaintiff's choice of forum) (citing *In re Butcher*, 46 B.R. 109, 112 (Bankr. N.D. Ga. 1985); *Chrysler Credit Corp. V. Country Chrysler, Inc.*, 928 F.2d 1509,

1515 (10th Cir. 1991). "Factors cited by courts in determining whether transfer of venue will serve the interests of justice include: (a) the economic administration of the bankruptcy estate; (b) the presumption in favor of trying cases 'related to' a bankruptcy case in the court in which the bankruptcy is pending; (c) judicial efficiency; (d) ability to receive a fair trial; (e) the state's interest in having local controversies decided within its borders; (f) enforceability of any judgment rendered; and (g) the plaintiff's original choice of forum." *Shaver*, at *6 (quoting *Blanton v. IMN Financial Corp.*, 260 B.R. 257, 267 (M.D. N.C. 2001).

As set forth above, this declaratory judgment action is a non-core proceeding and will not affect the economic administration of the bankruptcy estate. Furthermore, even if this action were related to the Bankruptcy Action, "it follows that it would be a more efficient use of the parties' and the Court's resources" for the District Court not to disturb Harleysville's original choice of forum, and to retain jurisdiction over this action. *In re Peanut Corp. of America*, 407 B.R. at 865.

Harleysville does not consent to the Bankruptcy Court issuing final orders in this declaratory judgment action or in the Adversary Proceeding. Nor has Harleysville submitted a proof of claim in the Bankruptcy Action. Moreover, Harleysville has objected to the Bankruptcy Court's subject matter jurisdiction over the Adversary Proceeding by filing its Motion to Withdraw the Reference and Motion to Stay Adversary Proceeding. Thus, if the Bankruptcy Court "were to try the present action, it would be limited in its ruling to issuing a report and recommendation in accordance with *28 U.S.C. § 157(c)(1)* and *Fed. R. Bankr. P. 9033* to the District Court, which would then be required to undertake a *de novo* review." *In re Porter-Hayden Co.*, 304 B.R. at 736; *see also Shaver*, *supra*, at *9 ("in a non-core proceeding a Bankruptcy court is not able to enter a final judgment; rather, the findings of fact and

17

conclusions of law are submitted to the district court. 28 U.S.C. § 157(c)(1). Consequently, Defendants have not shown that a transfer of this case will result in all matters in controversy being decided by the bankruptcy judge. I do not find that judicial economy will be served by transferring this case.").

Both the parties and the Court benefit from an efficient pre-trial process that consolidates discovery of the RHI Action and the Adversary Proceeding and involves one judge from initial Rule 26 conference through jury trials of the two cases. This allows the Court and parties to avoid the cost of inefficient efforts, including duplicate depositions that might be required if this Adversary Proceeding remained in the Bankruptcy Court while the RHI Action properly remained in the District Court.

The efficiencies of having the District Court handle both this action and the Adversary Proceeding (rather than the Bankruptcy Court handling both or each court handling one) will be apparent at every stage of the proceedings and most pronounced in matters involving dispositive motions, determinations of the scope of permissible discovery, experts and challenges to their opinions, and the scheduling of pre-trial matters after discovery closes.

Therefore, not only is it legally more proper, but it makes more sense from an efficiency standpoint to deny RHI's Transfer Motion. Having the District Court Judge involved from the beginning is more efficient than having the litigation proceed on a piecemeal basis before more than one judge, especially given the inevitability of Bankruptcy Court rulings being appealed to the District Court. The efficiency of having the District Court involved in management of the litigation early in the proceedings is underscored by the better qualifications of the District Court than the Bankruptcy Court to handle cases involving state law claims with which the District Court routinely deals and with which Bankruptcy Courts are not as familiar.

DMEAST #12091445 v1

*Cf, In re Mitchell*, 206 B.R. 204, 213 (Bankr. C.D. Cal. 1997) (abstaining in a case involving breach of contract, conversion, fraud, and misrepresentation on the basis that bankruptcy judges do not have any special expertise in such areas and that the district court handling the case was better qualified than the bankruptcy court, especially in light of the fact that the jury trial can only be conducted by the bankruptcy court with consent of all of the parties); *In re J&J Towne Pharmacy, Inc.*, 2000 WL 568355 (Bankr. E.D. Pa. 2000) (bankruptcy court abstained from hearing the matter in part because the claims consisted of state or federal non-bankruptcy law issues "which the district or state courts would be better suited to decide"). Moreover, "[]inasmuch as a bankruptcy court's determinations on non-core matters are subject to *de novo* review by the district court, unnecessary costs could be avoided by a single proceeding in the district court." *Security Farms v. Int'l Bhd. Of Teamsters, Chauffeurs, Warehouseman & Helpers*, 124 F.3d 999, 1009 (9th Cir. 1997).

Withdrawal of reference to the Adversary Proceeding and retention of jurisdiction over this declaratory judgment action will promote uniformity and efficiency with respect to all actions involving Harleysville, RHI, and The Hammocks. This is particularly so because, as set forth below, the jury trials will ultimately be held in the District Court.

Harleysville is entitled to a jury trial to be conducted in the District Court on RHI's negligence counterclaims and the Adversary Proceeding claims. Harleysville will file an Answer to Defendant's Counterclaims in which Harleysville will request a jury trial to which it is entitled on RHI's negligence counterclaim. This is a legal claim for which Harleysville has a Seventh Amendment right to a jury trial. *See Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d. 33 (1989) (a right to jury trial attaches to legal actions seeking to recover monetary damages); *Stansbury Poplar Place, Inc. v. Schwartzman*, 13 F.3d 122, 125

DMEAST #12091445 v1

(4th Cir. 1993) (citing *Granfinanciera* and holding Seventh Amendment jury trial right attaches to actions seeking monetary damages); *see also In re: Bonds Distribution Co.*, No. 97-52130C-7W, 2000 Bankr. LEXIS 2011, at *7, 39-43, 47 (Bankr. M.D.N.C. Nov. 15, 2000), rev'd on other grounds, 39 Fed. Appx. 895 (4th Cir. 2002).

Following *Granfinanciera,* Congress specifically authorized bankruptcy judges to conduct jury trials under certain limited circumstances: "If the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district court and *with the express consent of all the parties.*" 28 U.S.C. § 157(e) (emphasis added).  Thus, without Harleysville's express consent, which it does not provide, the Bankruptcy Court lacks jurisdiction to conduct the jury trial to which Harleysville is constitutionally entitled.  By retaining jurisdiction, the District Court can become more familiar with the case prior to trial, which will enhance judicial efficiency and Harleysville's ability to receive a fair trial.

Accordingly, RHI cannot establish its burden by a preponderance of the evidence to demonstrate that this Court should exercise its discretion and transfer venue to the Bankruptcy Court under either 28 U.S.C. § 1412 or 28 U.S.C. § 1404(a).

<u>CONCLUSION</u>

This action is a dispute between two entities (Harleysville and RHI) that have not filed for bankruptcy protection.  The dispute is governed by an insurance policy that was issued well before The Hammocks sought bankruptcy protection.  Furthermore, RHI does not seek to recover assets for The Hammocks bankruptcy estate, but rather RHI seeks to recover assets for itself.  Finally, the claims in this action, including RHI's counterclaim for negligence, give rise to the right to a jury trial.  Harleysville demands to exercise its right to a jury trial in the District Court.

DMEAST #12091445 v1

For the foregoing reasons, this action was properly filed in the District Court and it should proceed in this Court. Harleysville respectfully requests that the Court enter an Order denying RHI's Transfer Motion in its entirety.

Respectfully submitted,

Dated: December 28, 2009

*/s/ David L. Brown*
David L. Brown
N.C. State Bar No. 18942
dbrown@pckb-law.com
Brady A. Yntema
N.C. State Bar No. 25771
byntema@pckb-law.com
PINTO COATES KYRS & BROWN, PLCC
3203 Brassfield Road
Greensboro, NC 27410
Telephone: 336.282.8848
Facsimile: 336.282.8409

Michael R. Nelson
Pa. State Bar No. 65679
NELSON, LEVINE, DE LUCA & HORST
518 East Township Line Road
Suite 300
Blue Bell, PA 19422

Douglas Y. Christian
Pa. State Bar No. 41934
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103

*Attorneys for Plaintiff*
*Harleysville Mutual Insurance Company*

DMEAST #12091445 v1

<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the document to which this Certificate is affixed was served upon the party(s) to this action by means of the Electronic Filing System of the Bankruptcy Court on December 28, 2009.

<u>/s/ Brady A. Yntema</u>
Brady A. Yntema
N.C. State Bar No. 25771
<u>byntema@pckb-law.com</u>
PINTO COATES KYRE & BROWN, PLLC
3203 Brassfield Road
Greensboro, NC 27410
Telephone: 336.282.8848
Facsimile: 336.282.8409
*Attorney for Plaintiff Harleysville Mutual*
*Insurance Company*

DMEAST #12091445 v1