UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL ACTION NO.: 1:09-cv-00377

HARLEYSVILLE MUTUAL )
INSURANCE COMPANY, )
    Plaintiff and )
    Cross-Defendant, )
vs. )
    )
RICHMOND HILL, INC., )
    Defendant and )
    Cross-Claimant. )

## REPLY IN SUPPORT OF MOTION TO TRANSFER

NOW COMES Defendant Richmond Hill, Inc. ("RHI"), submits the following Reply in support of its Motion to Transfer this action to the Honorable George Hodges of the United States Bankruptcy Court for the Western District of North Carolina, Asheville Division.

### ARGUMENT

**1. The Bankruptcy Court has subject matter jurisdiction over both this declaratory judgment action and the related adversary proceeding.**

28 U.S.C. § 1334(b) "grants the district courts jurisdiction over three categories of bankruptcy proceedings: 1) civil proceedings 'arising under' the bankruptcy code; 2) civil proceedings 'arising in' a case under the bankruptcy code; and 3) civil proceedings 'related to' a case under the bankruptcy code." In re Nichols & Associates Tryon Properties, 1994 U.S. App. LEXIS 25519, *5, 6 (4th Cir. Sept. 14 1994). In the Western District, jurisdiction over these proceedings is delegated to the Bankruptcy Judges of the Western District of North Carolina pursuant to an Administrative Order Assigning and Allocating All Bankruptcy Matters for Administration and Otherwise Handling and Supervision to Judge Hodges, Judge Whitley and Judge Wooten dated May 31, 1995. See, e.g., In Re: 222 South Caldwell St., Ltd Partnership,

731660-1

409 B.R. 770, 782; 2009 Bankr. LEXIS 2234, *17 (June 17, 2009). Thus, so long as this declaratory judgment action and the related adversary proceeding fall under one of these three categories, subject matter jurisdiction is proper in Bankruptcy Court before the Honorable Judge George Hodges.

> **a. Because this Declaratory Judgment action and the related Adversary Proceeding will have a direct effect on the pending Chapter 11 bankruptcy action, subject matter jurisdiction is proper in bankruptcy court.**

There is no question that both the pending declaratory judgment action and the related adversary proceeding are, at minimum, "related to" the Chapter 11 bankruptcy proceeding of The Hammocks, LLC ("The Hammocks") (See Case 09-10332) for purposes of establishing subject matter jurisdiction. It is well settled that a "case filed in district court is related to a case in bankruptcy if the outcome of the civil case could conceivably have any effect on the estate being administered in bankruptcy… if the outcome could alter the debtor's rights, liabilities, options or freedom of action (positively or negatively) and which in any way impact upon the handling and administration of the bankrupt estate[.]" New Horizon of N.Y., LLC v. Jacobs, 231 F.3d 143, 150-151 (4th Cir. 2000).

Both this Declaratory Judgment action and the related Adversary Proceeding seek recovery of more than $6 million worth of insurance proceeds related to the fire that destroyed the Richmond Hill mansion on or about March 19, 2009. RHI is the largest secured creditor in the bankruptcy proceeding, owed more than $6.8 million secured by a deed of trust on the Richmond Hill property, including the now destroyed mansion. See Bankruptcy Petition, Case 09-10332, Doc. 1. The Harleysville insurance policy provided more than $13.2 million in fire insurance coverage on the mansion, other buildings and personal property. See Ex. A to Harleysville's Complaint, Doc. 1.

The bankruptcy action was filed on March 25, 2009, approximately 6 days <u>after</u> the fire destroyed the mansion.  <u>See</u> Bankruptcy Petition, Case 09-10332, Doc. 1.  Recognizing the mansion was one of the major pieces of collateral secured by RHI's deed of trust, The Hammocks' Chapter 11 Plan specifically provides that RHI's "secured claim will be paid from the insurance proceeds from the fire loss (as well as other potential insurance claims) as its lien attached to the inn proceeds." <u>See</u> Case 09-10332, Doc. 76.  After Harleysville essentially denied the insurance claim, The Hammocks filed its Adversary Proceeding against Harleysville on December 2, 2009, to recover insurance proceeds associated with the fire, including $5,089,119 for the destruction of the mansion itself, $824,529 for lost personal property, $48,400 for debris removal and $79,133 for loss of income.  <u>See</u> Adversary Complaint, Case 09-10332, Doc. 116, ¶ 18.  The Hammocks did not request a jury trial in its adversary proceeding.  <u>Id.</u>

On September 11, 2009, the undersigned counsel for RHI sent a letter to counsel for Harleysville demanding coverage for RHI's claim for the insurance proceeds for its mortgagee interest in the property.  Harleysville's response to that letter was to file this Declaratory Judgment action on October 5, 2009, seeking a declaration by the Court – not a jury – that RHI is not entitled to recover under the insurance policy.  <u>See</u> Doc. 1.  RHI's Answer and Counterclaim primarily seeks a declaration by the Court – not a jury – that RHI is entitled to coverage under the policy.  <u>See</u> Answer, Doc. 16, First Counterclaim.  In the alternative, RHI seeks a declaration by the Court – not a jury – that RHI is entitled to an equitable lien on any monies recovered by The Hammocks from Harleysville.  <u>Id.</u> at Second Counterclaim.  Also in the alternative, and only if the Court determines that RHI is not covered by the Harleysville policy, RHI seeks to recover damages from Harleysville under negligence theories.  <u>Id.</u> at Third Counterclaim.  RHI has not yet requested a jury trial for any of these claims.  In its Answer to RHI's Counterclaims,

Harleysville denies RHI's claims and demands a "trial by jury on all issues so triable in this action." See Answer, Doc. 20, p. 12.

Thus, both this Declaratory Judgment and the Adversary Proceeding seek to recover insurance proceeds from Harleysville arising out of the fire that destroyed the Richmond Hill mansion. If either action is successful in forcing Harleysville to pay insurance proceeds, then a substantial portion of the more than $6.8 million secured claim of RHI would be satisfied and the remaining property can be sold to satisfy the balance of RHI's secured interest, leaving substantial proceeds available for other creditors. See Olivieri v. Generali Ins. Co., 238 B.R. 1, 3 (Bankr. D.R.I. 1999) (holding that because the property that burned was an asset of the bankruptcy estate, so were the proceeds of a fire insurance policy covering the property, which could be used to satisfy the secured creditors). [1]

There is no question that this Declaratory Judgment action, at minimum, "relates to" the pending Chapter 11 bankruptcy and, therefore, that subject matter jurisdiction is proper. In Nichols, supra, Nichols, the bankrupt debtor acquired the Tryon Mall three months before it was destroyed by fire. In re: Nichols, 1994 U.S. App. LEXIS at *2. Following the fire, the insurer, United Capital, denied coverage for the claim. Id. at *4. Nichols and Nichols' mortgagee, Connecticut Mutual (along with two successor owners), filed an adversary proceeding in bankruptcy court against United Capital asserting various state law claims for its refusal to provide coverage. Id. On appeal of a default judgment against United Capital for failure to comply with discovery orders, the Fourth Circuit determined that the bankruptcy court had jurisdiction over the adversary proceeding. Id. at **7-8. The Court noted that the adversary

---

[1] Harleysville's argument that the policy proceeds are not property of the estate is misplaced. See Doc. 19 at pp. 15-16. The cases cited by Harleysville in support of this argument concern suits against the estate to recover liability insurance proceeds, not suits by the estate and a mortgagee to recover fire insurance proceeds. See Houston v. Edgeworth, 993 F.2d 51 (5th Cir. 1993) (malpractice claim against debtor's malpractice insurer); In re Doug Baity Trucking, Inc., 2005 Bankr. LEXIS 1099 (M.D.N.C. Apr. 21, 2005) (personal injury and property damage claims against debtor's liability insurance policy).
731660-1

proceeding "could conceivably have an effect on the Nichols bankruptcy estate," and that "requiring United Capitol to cover the disputed claim will reduce the total amount of claims lodged against the estate, leaving more of the estate's general assets available for use in creating a viable plan of reorganization." Id.

The same issue is presented in this Declaratory Judgment action. RHI and The Hammocks could have filed a joint adversary proceeding against Harleysville, as did Nichols and Connecticut Mutual in the *Nichols* case, but for Harleysville's preemptive filing of this Declaratory Judgment action first.[2] Because the issues presented by this Declaratory Judgment action are substantially similar to the issues presented in The Hammocks' Adversary Proceeding and because the outcome of these two cases have such a significant effect on the administration of the bankruptcy estate, this Court should transfer this Declaratory Judgment action to the bankruptcy court for consolidation with the pending Adversary Proceeding. See Seascape at Wrightsville Beach, LLC v. Mercer's Enters., 387 B.R. 681, 688 (Bankr. E.D.N.C. 2008) ("it is clear in this case that the bankruptcy court is the proper forum to hear the disputes because the main bankruptcy case is largely dependent on the outcome of the civil suits, the matters do not present complex or unsettled issues of state law, and hearing the matters in bankruptcy court will promote judicial economy").

### b. The scope of review by the Bankruptcy Court depends on whether the case is a core proceeding or non-core related proceeding.

Whether this Declaratory Judgment action and the related Adversary Proceeding are core proceedings or non-core proceedings impacts the scope of review by the District Court, not the jurisdiction of the Bankruptcy Court to hear the proceedings initially. See Canal Corp. v. Finnman, 960 F.2d 396 (4th Cir. 1992). In core proceedings, bankruptcy judges have authority to

---

[2] On the same day Harleysville filed this Declaratory Judgment action, it also filed a Motion for Relief from Stay in the bankruptcy proceeding, seeking to rescind the insurance policy and to otherwise deny coverage. See Case 09-10332, Doc. 68).

731660-1

enter final judgments and orders. Id. at 400. In non-core related proceedings, they can hear the case, "but they may not enter final orders; in such cases they are usually required to submit proposed findings and conclusions to the district court where they are subject to *de novo* review." Id. As explained below, Harleysville's Declaratory Judgment Action and RHI's counterclaims under N.C.G.S. 58-43-15 and for an equitable lien are postpetition core proceedings that may be decided without a jury. The only claim raised for which a jury trial is available, RHI's negligence claim, will only be reached if the other issues are resolved in favor of Harleysville and, in that event, the jury trial may be made available to Harleysville in the District Court.

### i. The acts and omissions giving rise to these claims occurred postpetition.

Harleysville argues that "[a]ll of RHI's Counterclaims involve prepetition conduct." Doc. 19, Pl's Br. p. 6. As explained below, this statement is factually inaccurate and Harleysville's argument premised on this position is unpersuasive.

When considering whether a claim is core or non-core, courts consider a variety of factors, including whether the claim existed prior to or after the filing of the bankruptcy case and whether the parties' rights or obligations are significantly affected by the outcome of the bankruptcy proceedings. See, e.g., K V Oil & Gas, Inc. v. Centre Equities, Inc., 2009 U.S. Dist. LEXIS 76734 (S.D. W. Va. Aug. 27, 2009); Hudgins v. Shah (In re Systems Eng'g & Energy Mgmt. Assocs.), 252 B.R. 635 (Bankr. E.D. Va. 2000); Blackshire v. Litton Loan Servicing, L.P., 2009 U.S. Dist. LEXIS 17715 (S.D. W. Va. Feb. 13, 2009). Further, each claim in this lawsuit must be analyzed on an individual basis. In re Exide Techs., 544 F.3d 196, 206 (3d Cir. Del. 2008).[3] Harleysville's Declaratory Judgment Action, which only became ripe after it denied coverage to RHI after the loss, as well as RHI's counterclaims under N.C.G.S. § 58-43-15 and for an equitable lien, are core proceedings which arose after the filing of the bankruptcy.

---

[3] Harleysville's brief does not address RHI's counterclaims under N.C.G.S. § 58-43-15 and for an equitable lien individually nor does it contest that these are core proceedings involving postpetition conduct. See *supra*.
731660-1

Harleysville's denial of the coverage to RHI occurred postpetition. On September 11, 2009, the undersigned counsel for RHI sent a letter to counsel for Harleysville demanding coverage for RHI's claim for the insurance proceeds for its mortgagee interest in the property. Harleysville's response to that letter was to file this Declaratory Judgment action on October 5, 2009. With the filing of this action, Harleysville effectively denied coverage to RHI as a mortgagee. It was that event which gave rise to Harleysville's instant action, RHI's counterclaims pursuant to N.C.G.S. § 58-43-15 and RHI's claim for relief based on an equitable lien theory. This event occurred over **six months after** The Hammocks filed for bankruptcy, on March 25, 2009.

Harleysville erroneously relies on prepetition breach of contract cases in its Memorandum to support its proposition that RHI's Counterclaims are non-core. See Br. p. 10 ("It seems self-evident that a claim, like the Debtor's breach of contract claim, that pre-dates the filing of the Chapter 11 case cannot be said to have arisen within that case." Valley Historic Ltd. P'ship v. Bank of N.Y., 486 F.3d 831, 837 (4th Cir. 2007). In contrast to the instant case, the issue in Valley Historic was the defendant bank's alleged breach of contract regarding loan terms **several months prior to** the debtor's filing of its Chapter 11 bankruptcy petition. Id. at 834-35.[4]

Another case cited by Harleysville to support its non-core argument, Humboldt Express, Inc. v. Wise Co. (In re Apex Express Corp.), 190 F.3d 624 (4th Cir. 1999), is also distinguishable because it involved a prepetition breach of a prepetition contract. See Doc. 19, Pl's Br. p. 11. There, the bankruptcy petition was filed in February of 1996. The trustee brought an adversary proceeding to collect on 15 accounts receivable, 14 of which were well **over one year old** when the debtor filed the adversary proceeding in November of 1996. Id. at 628. The court concluded

---

[4] Although the court in Valley Historic also concluded that the bankruptcy court did not have jursiticion over the postpetition tortious interference contract, the court did note that "the Debtor's claims b[ore] only a coincidental relationship to the Debtor's bankruptcy case." Id. at 836. Here, in contrast, the question of insurance coverage is the by far the most significant asset of the Bankruptcy Court and has a significant relationship to that case.
731660-1

that the accounts receivable claims against the strangers to the bankruptcy estate and which arose prepetition should be treated as non-core proceedings. Id. at 631-32.

This prepetition versus postpetition distinction was also recognized by a court in this district in Magers v. Holland Group of Tenn., Inc. (In re Griffin Services, Inc.), 2005 Bankr. LEXIS 1116 (Bankr. M.D.N.C. Mar. 2, 2005). There, the trustee brought claims for breach of contract, tortious interference, and unfair and deceptive trade practices against the defendants relating to a non-compete agreement. The contracts at issue were entered into prior to the filing of the bankruptcy but the allegations related to their breach occurred postpetition. The court held that the action was a core proceeding because the trustee's breach of contract and tort claims were based on postpetition actions by the defendants that directly damaged the bankruptcy estate and its creditors. Id. at **10-12. In essence, while the creditors were seeking equitable distribution of assets in the bankruptcy proceeding, the defendants were allegedly misappropriating the asset of the debtors' confidential business information. Thus, the adversary proceeding was properly before the bankruptcy court. Id. at **12-13 (citing Smith v. East Hill Mfg. Corp. (In re East Hill Mfg. Corp.), 200 B.R. 535 (D.Vt. 1996) (postpetition breach of a prepetition non-competition agreement is core); Nutri/System v. Carma, Inc. (In re Nutri/System), 159 B.R. 725 (E.D. Pa. 1993) (postpetition breach of prepetition contract is core because it relates to the administration of the estate); Hughes-Bechtol, Inc. v. Construction Mgmt., Inc., 144 B.R. 755 (S.D.Ohio 1992) (claim related to prepetition construction contract for which the majority of the work was performed postpetition was core).)

The scenario before the court in Valley Forge Plaza Insurance Associates v. Fireman's Fund Insurance Companies, Inc., 107 B.R. 514 (E.D. Pa. 1989), is also comparable and instructive here. There, the court was asked to withdraw the reference of an adversary proceeding filed by the Chapter 11 debtor against its insurers for a declaration that its general liability and

731660-1

liquor liability policy remained in effect and for injunctive relief against cancellation of the policy. The basic question was whether the debtor was an intended insured under the policy. The Court found the action to be core, concluding that the Supreme Court in Marathon Pipe Line did not intend to include these postpetition breach of contract claims, including those for declaratory judgments, in the category of "traditional" contract actions which could be adjudicated only in Article III courts. Id. at 517-18 (citing numerous cases in which courts have held that actions based on postpetition causes of actions are within § 157(b)(2)(A) that can be heard and determined by a bankruptcy judge).

### ii. Harleysville's Declaratory Judgment Action is a core proceeding because it is the most important asset of the bankruptcy estate.

Harleysville's postpetition Declaratory Judgment action is a core proceeding because it directly affects the Bankruptcy Court's core administrative function of asset allocation among creditors. 28 U.S.C. §157(O). Where the "most important asset of a debtor's estate" consists of insurance contracts, "[p]roceedings involving such contracts may be core, especially if necessary to assist in creating "an equitable distribution of the bankruptcy estate," which has a direct affect on a "bankruptcy court's core administrative function of asset allocation among creditors." United States Lines, Inc. v. American S.S. Owners Mut. Protection & Indem. Ass'n (In re United States Lines, Inc.), 197 F.3d 631, 638-39 (2d Cir. 1999) (denying insurance company's motion to withdraw an adversary proceeding relating to various insurance contract claims). Several other courts have held that actions on insurance contracts may be core proceedings as the Bankruptcy Court has concluded in this matter. See, e.g., Joe Gibson's Auto World, Inc. v. Zurich Am. Ins. Co. (In re Joe Gibson's Auto World, Inc.), 416 B.R. 469, 476 (Bankr. D.S.C. 2009) (holding that debtor's adversary proceeding for breach and bad faith refusal to resolve a valid insurance claim was core even though it involved prepetition facts and contracts that were independent of the bankruptcy because it evolved to include essential postpetition events, interpretation of which

was necessary to determine what amount was due to the estate from the insurer to receive an equitable distribution among creditors); Seascape at Wrightsville Beach, LLC v. Mercer's Enters. (In re Mercer's Enters.), 387 B.R. 681, 685 (Bankr. E.D.N.C. 2008) (causes of action in the adversary proceedings relating to real estate contract were core because the "go precisely to what, if anything, comprises the debtor's estate"); Cohen v. National Union Fire Ins. Co. (In re County Seat Stores), 2002 U.S. Dist. LEXIS 1555 (S.D.N.Y. Jan. 25, 2002) (holding that a debtor's coverage action against the insurance company before the bankruptcy court was core because it threatened to affect a core bankruptcy function in a direct manner and reasoning that it would be more efficient to keep the matter in the bankruptcy court which was already "well versed in both the procedural history and the facts of this case"); Hirsch v. London Steamship Owners' Mutual Life Ins. Co. (In re Seatrain Lines, Inc.), 198 B.R. 45, 51 (S.D.N.Y. 1996) (Sotomayor, J.) (holding that trustee's claim against insurer for coverage and defense of personal injury claims was core and pertained to the administration of the debtor's estate because the cause of action accrued postpetition when the insurance companies refused the estate's demand for defense and indemnification).

Although the Fourth Circuit found an insurance coverage dispute in Nichols, supra, to be a non-core, "related to" matter rather than a core matter, it did not discuss the importance of those proceeds as an asset of the bankruptcy court. 1994 U.S. App. LEXIS 25529. The opinion does state, however, that in Nichols the proceeds claimed were $273,424. Id. at *4. Here, however, RHI claims its mortgagee interest of more than $6.8 million in property valued at over $5 million and The Hammocks is claiming the proceeds from the policy for lost income and extra expenses, for which there is $3 million in coverage. Doc. 16, ¶ 23.

Harleysville emphasizes in its brief that because RHI is not attempting to recover the fire insurance proceeds for its mortgage interest "on behalf of" The Hammocks, then the proceeds are

731660-1

Case 1:09-cv-00377-MR-DLH    Document 24    Filed 01/13/10    Page 10 of 15

not "property of the estate." Doc. 19, Pl's Br. p. 15. Harleysville's reliance on <u>Houston v. Edgeworth</u> for this proposition is misplaced because that case involved insurance proceeds that were payable only for the benefit of those harmed by appellee under the terms of the policy and therefore the proceeds of the policy were not an asset of the bankruptcy estate. 993 F.2d 51, 55 (5th Cir. Tex. 1993). Doc. 19, Pl's Br. p. 15.

While RHI does claim that Harleysville has an obligation to pay it as mortgagee, Harleysville's argument overlooks the fact that other proceeds from the insurance policy claimed by The Hammocks are not claimed by RHI and are admittedly not recoverable by RHI but are strictly an asset of the bankruptcy court. The Hammocks claims that Harleysville must compensate it for "the value of the Mansion and business personal property, for debris removal, and for rents and earnings lost and additional expenses incurred by reason of the fire." (Case 09-10332, Doc. 1, ¶ 28(e).) Thus, unlike the policy in <u>Houston</u>, part of the policy here is an asset of the Bankruptcy Court further supporting the transfer of this action to the Bankruptcy Court and the consolidation of it with The Hammocks' Adversary Proceeding.

### iii. RHI's counterclaim under N.C.G.S. § 58-43-15 is a core proceeding that by statute could not have arisen until after commencement of the bankruptcy action.

RHI's declaratory judgment claim under N.C.G.S. § 58-43-15 did not arise until the deadline for payment from Harleysville based on the insurance contract: "90 days after the loss or within 60 days of the filing of the proof of loss, whichever is the longer period." <u>Id.</u> The loss occurred on March 19, 2009 and the proof of loss was submitted on May 29, 2009. Accordingly, RHI's cause of action for Harleysville's failure to pay it as a mortgagee pursuant to N.C.G.S. § 58-43-15 did not arise until June 28, 2009, 60 days after the filing of the proof of loss but almost 100 days after The Hammocks' filing of its bankruptcy petition. The nature of this claim as a core proceeding is also supported by the language of § 157(b)(2)(a), which describes "matters

731660-1

concerning the administration of the estate" as a core proceeding.  Id.   Harleysville takes no position regarding the N.C.G.S. § 58-43-15 counterclaim in its brief.

### iv. RHI's Counterclaim for an equitable lien is a core proceeding.

Additionally, there is no question that RHI's equitable lien claim is a core proceeding that arose postpetition.  "[D]eterminations of the validity, extent, or priority of liens" are causes of action specifically referenced as core matters under 28 U.S.C. § 157(b)(2)(K). See, e.g., Cooper v. BB Syndication Servs. (In re 222 S. Caldwell St., Ltd. P'ship), 409 B.R. 770, 783 (Bankr. W.D.N.C. 2009) (holding that determinations about purchasers' equitable lien claims against a debtor in a bankruptcy adversary proceeding were core proceedings); Driscoll v. Ultimate Reserve Trust (In re Tait), 2008 Bankr. LEXIS 2489 (Bankr. S.D. Ala. Sept. 10, 2008) (holding that determination of extent of equitable lien on lawsuit proceeds is a core proceeding); Harleysville Worcester Mut. Ins. Co. v. Fleet Nat'l Bank (In re Suprema Specialities, Inc.), 2006 Bankr. LEXIS 2358 (Bankr. S.D.N.Y. June 8, 2006) (holding that plaintiffs' claim to an equitable lien on and the recovery of property of the estate was a core proceeding); see also Canal Corp. v. Finnman (In re Johnson), 960 F.2d 396, 402 (4th Cir. 1992) ("The finding of a constructive trust by the bankruptcy court and a determination of the proper distribution of that trust are intimately tied to the traditional bankruptcy functions and estate, and, therefore, are core matters within the clear jurisdiction of the bankruptcy court.")  Harleysville does not offer any authority to support its argument that the postpetition equitable lien counterclaim is not a core proceeding in its brief.

### v. Harleysville's 7th Amendment right to a jury trial of the counterclaim for negligence will not be affected if RHI's Motion to Transfer is granted.

Harleysville has demanded a jury trial in its defense of RHI's counterclaim for negligence and has indicated that it will not consent to a jury trial on this issue in the Bankruptcy Court. Doc. 19, Pl's Br. p. 3.  While arguably RHI's counterclaim for negligence may be non-core, it is

still a related-to matter over which the bankruptcy court has jurisdiction.  <u>Supra</u>.  RHI urges this Court to transfer this proceeding to the bankruptcy court until it is ready for trial.  First, this claim is a third alternative to RHI's claims other claims and thus may never be reached.  Second, judicial economy would be better served by hearing this matter and The Hammock's adversary proceeding in one forum because the crux of these proceedings involves core matters and they are substantially related to the allegations at issue in The Hammocks' adversary proceeding already pending in the Bankruptcy Court.  Third, the Bankruptcy Court is already well versed in both the procedural history and the facts of this case, as the petition was filed almost ten months ago in that Court.

With respect to any non-core matters involved, the Bankruptcy Court may hear them and submit its proposed findings of fact and conclusions of law to this Court for review pursuant to 28 U.S.C. § 157(c)(1).  The presence of some non-core matters "does not mean that the bankruptcy court immediately loses jurisdiction of the entire matter or that the district court cannot delegate to the bankruptcy court the responsibility for supervising discovery, conducting pre-trial conferences, and other matters short of the jury selection and trial."  <u>In Re Stansbury Poplar Place, Inc.</u>, 13 F.3d 122, 128 (4th Cir. 1993).

Finally, to the extent Harleysville wishes a jury trial on any issues in the case, including the alternative negligence claim in the Declaratory Judgment Action or any of the claims asserted by The Hammocks in the Adversary Proceeding, RHI hereby expressly consents to any jury trial on all issues in the Bankruptcy Court.  If both The Hammocks and Harleysville consent to a jury trial, then Harleysville will get its Seventh Amendment jury trial albeit in Bankruptcy Court.

Respectfully submitted this the 13th day of January, 2010.

                                       s/ Wyatt S. Stevens
                                       NC State Bar No. 21056
                                       Ann-Patton Hornthal
                                       NC State Bar No. 35477
                                       ROBERTS & STEVENS, P.A.
                                       P.O. Box 7647
                                       Asheville, NC  28801
                                       Telephone:  (828) 258-6992
                                       Facsimile:   (828) 253-7200
                                       E-mail: wstevens@roberts-stevens.com
                                                           aphornthal@roberts-stevens.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Reply in Support of Motion to Transfer was served upon the following attorney(s) by notice of electronic filing through the CM/ECF system/electronic mail:

| | |
|---|---|
| Mr. David Brown<br>Mr. Brady Yntema<br>Pinto, Coates Kyre & Brown<br>3202 Brassfield Road<br>Greensboro, NC 27410<br>Telephone: (336)282-8848<br>Facsimile: (336)282-8409<br>E-Mail: dbrown@pckb-law.com<br>E-Mail: byntema@pckb-law.com<br><br>Mr. Douglas Y. Christian<br>Ballard, Spahr, Andrews & Ingersoll, LLP<br>1735 market Street – 51st Floor<br>Philadelphia, PA 19103-7599<br>Telephone: (215)665-8500<br>Facsimile Transmission: (215)864-8999<br>christiand@ballardspahr.com | Mr. Michael R. Nelson<br>Nelson, Levine, deLuca & Horst, LLC<br>518 Township Line Rd., Suite 300<br>Blue Bell, PA 19422<br>Telephone: (215)358-5160<br>Facsimile: (215)358-5101<br>mnelson@nlehlaw.com |

This the 13th day of January, 2010.

                s/Wyatt S. Stevens
                wstevens@roberts-stevens.com