UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:09cv377

| | | |
|---|---|---|
| HARLEYSVILLE MUTUAL | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM OF LAW** |
| | ) | **IN SUPPORT OF PLAINTIFF'S** |
| vs. | ) | **MOTION FOR JUDGMENT** |
| | ) | **ON THE PLEADINGS** |
| RICHMOND HILL, INC., | ) | |
| | ) | |
| Defendant. | ) | |

Pursuant to Local Rule 7.1, Plaintiff Harleysville Mutual Insurance Company ("Harleysville"), by and through counsel, respectfully submits the following Memorandum of Law in Support of its Motion for Judgment on the Pleadings.

## I.      NATURE OF CASE

This declaratory judgment action is based upon Harleysville's position that Defendant Richmond Hill, Inc. ("RHI") is not entitled to coverage under the Policy of Insurance, number OF-3M2977 ("the Policy")[1] issued by Harleysville to The Hammocks, LLC ("The Hammocks") because: 1) RHI is not a "loss payee" or "mortgagee" as those terms are used and defined under the Policy; 2) the Policy does not list RHI as a mortgagee; and 3) the sworn insurance application submitted to Harleysville does not reference any mortgagee's interest. [Plaintiff's Complaint, ¶¶ 32, 34 – Doc. 1].  RHI has filed an answer and asserted three counterclaims. (Doc. 16).

---

[1] Because the Policy is referenced in both the Plaintiff and Defendant's pleadings and integral to the allegations therein, it is deemed incorporated in the pleadings by reference and may be relied upon in a Motion for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c). *Darcangelo v. Verizon Communications, Inc.,* 292 F.3d 181, 195 n. 5 (4th Cir. 2002); *Phillips v. LCI Int'l,* Inc., 190 F.3d 609, 618 (4th Cir. 1999); *Eagle Nation, Inc. v. Market Force, Inc.,* 180 F. Supp. 2d 752 (E.D.N.C. 2001); *Gasner v. County of Dinwiddie,* 162 F.R.D. 280, 282 (E.D. Va. 1995); aff'd.,103 F.3d 351 (4th Cir. 1996). A true and accurate copy of the Policy is attached to the Plaintiff's Complaint as Exhibit "A" and incorporated herein by reference.

RHI's First Counterclaim seeks a declaratory judgment that RHI is entitled to insurance coverage as a mortgagee under the Policy, pursuant to §58-43-15 ("First Counterclaim"). RHI's First Counterclaim is based on the allegation that "[u]nder N.C.G.S. § 58-43-15[2], an insurance company is obligated to make payment to a mortgagee following a loss in two circumstances: (1) where there is an agreement between the mortgagor and mortgagee to that effect; or (2) where the mortgagee is listed as a loss payee under the terms of the insurance policy." [RHI's First Counterclaim, ¶ 5 – Doc. 16]. Based on its interpretation of N.C.G.S. § 58-43-15, RHI alleges that, "Harleysville is required to pay RHI insurance proceeds associated with the destruction of the [insured property] because RHI, the Hammocks, and Gateway Park Properties, entered into 'an agreement' in the deed of trust dated October 10, 2005 ("the Deed of Trust")[3] which required the Hammocks and Gateway to have fire insurance and required that all proceeds from any insurance be applied to the debt owed to RHI." [RHI's First Counterclaim, ¶ 6 – Doc. 16]. Harleysville strenuously disputes RHI's contention that RHI is an insured "mortgagee" under the Policy. Therefore, pursuant to Federal Rule of Civil Procedure 12(c), Harleysville has moved for

---

[2] N.C.G.S. § 58-43-15 reads as follows:

Where by an agreement with the insured, or by the terms of a fire insurance policy taken out by a mortgagor, the whole or any part of the loss thereon is payable to a mortgagee of the property for his benefit, the company shall, upon satisfactory proof of the rights and title of the parties, in accordance with such terms or agreement, pay all mortgagees protected by such policy in the order of their priority of claim, as their claims appear, not beyond the amount for which the company is liable, and such payments are, to the extent thereof, payment and satisfaction of the liabilities of the company under the policy. Any payment due by the insuring company to mortgagees or loss payees under the terms of the policy shall be made within 90 days of the loss or within 60 days of the filing of proof of loss, whichever is the longer period; provided, the payment of or settlement of the claim of the mortgagee or loss payee under the policy shall in no way constitute an admission of liability as to the insured and the fact of such payment or settlement shall be inadmissible in any action at law.

[3] Because the Deed of Trust is referenced in both the Plaintiff and Defendant's pleadings and integral to the allegations therein, it is deemed incorporated in the pleadings by reference and may be relied upon in a Motion for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12( c). *Darcangelo, et al., supra.* A true and accurate copy of the Deed of Trust is attached to the Plaintiff's Complaint as Exhibit "B" and incorporated herein by reference.

a judgment on the pleadings in its favor declaring that RHI is not an insured "mortgagee" under the Policy, and thus that RHI's First Counterclaim should be dismissed.

## II.     SUMMARY OF FACTS

In October 2005, The Hammocks and Gateway Park Properties, LLC ("Gateway") purchased the Richmond Hill Inn property from RHI.  [RHI's Counterclaims, ¶ 10 – Doc. 16]. At the time of purchase, The Hammocks and Gateway executed a Deed of Trust naming RHI as the beneficiary. The Deed of Trust was secured by the subject Richmond Hill Inn property. [*See* RHI's Counterclaims, ¶¶ 12, 13 – Doc. 16].  RHI avers that the "Deed of Trust incorporates by reference a Purchase Money Promissory Note evidencing the Hammocks and Gateway's indebtedness to RHI in the original amount of $8,800,000."  [RHI's Counterclaims, ¶ 14 – Doc. 16].  A true and accurate copy of the Deed of Trust was annexed to RHI's Answer as Exhibit "C" and is incorporated herein by reference. [RHI's Counterclaims, ¶ 15 – Doc. 16].

On or about October 15, 2008, Sara McCullough, an employee of The Hammocks, applied for the Policy through an insurance agent, Cheryl Reavis, at the White Insurance Agency in Black Mountain, North Carolina.  [*See* Plaintiff's Complaint, ¶ 18 – Doc. 1].  The following is a copy of the signature block on the insurance application[4] signed by Sara McCullough and Cheryl Reavis.

---

[4] Because the insurance application is referenced in the Plaintiff's Complaint and integral to the allegations therein, it is deemed incorporated in the pleadings by reference and may be relied upon in a Motion for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c). *Darcangelo, et al., supra.* A true and accurate copy of the insurance application is attached to the Plaintiff's Complaint as Exhibit "D" and is incorporated herein by reference.

3

[Plaintiffs' Complaint, ¶ 20 – Doc. 1].

Above the signature block, the application carries a warning to the signatory that that person could be subject to criminal and civil penalties if the person knowingly, and with the intent to deceive, files an application that contains material false or misleading information. [*See* Plaintiff's Complaint, ¶ 21 – Doc. 1]. Likewise, the text directly above the signature block requires the signatory to be authorized to sign the application on behalf of the applicant, specifically here, The Hammocks, and requires the signatory to certify that the signatory has made a reasonable inquiry regarding the answers, and that the answers are "true, correct and complete" to his or her knowledge. [*See* Plaintiff's Complaint, ¶ 22 – Doc. 1].

Pursuant to the completed application form, ACORD 125 (2005/06), submitted as part of the insurance application, the terms of which were not otherwise denied by RHI in ¶¶ 21-22 in its Answer (Doc. 16), the application indicates that there were no bankruptcies, or *tax or credit liens* (emphasis added) against the applicant in the past five years. Moreover, pursuant to each of the ten completed application forms, ACORD 140 (2002/09), also submitted as part of the insurance application, the terms of which were not otherwise denied by RHI in ¶¶ 21-22 in its Answer (Doc. 16), there were no references to any "additional interests", including but not limited to, any "loss payee mortgagee" interests, in relation to the ten buildings to be insured under the Policy.

Harleysville issued the Policy to The Hammocks, an entity described as a "limited liability company", for the property located at 87 Richmond Hill Drive, Asheville, NC 28806

4

("the Richmond Hill Inn property") with a stated Policy period of October 19, 2008 to October 19, 2009. [*See* Plaintiff's Complaint, ¶¶ 7, 8 – Doc. 1; Defendant's Answer, ¶ 7, 8 – Doc. 16]. The Policy was in its first year of issuance and was not the renewal of an earlier policy. [*See* Plaintiff's Complaint, ¶ 9 – Doc. 1; Defendant's Answer, ¶ 9 – Doc. 16]. The Policy contains, *inter alia*, the following provision:

> **Mortgage Provisions –** If a mortgagee (mortgage holder) is named in this policy, loss to building property will be paid to the mortgagee and [the policyholder] as their interest appears. If more than one mortgagee is named, they will be paid in order of precedence.
>
> The insurance for the mortgagee continues in effect even when [the policyholder's] insurance may be void because of [the policyholder's] acts, neglect, or failure to comply with the coverage "terms". The insurance for the mortgagee does not continue in effect if the mortgagee is aware of changes in ownership or substantial increase in risk and does not notify [the insurer].
>
> If [the insurer] cancel[s] this policy, [the insurer] will notify the mortgagee at least ten days before the effective date of cancellation if [the insurer] cancel[s] for [the policyholder's] nonpayment of premium, or 30 days before the effective date of cancellation if [the insurer] cancel[s] for any other reason.
>
> [The insurer] must request payment of the premium from the mortgagee if [the policyholder] fail[s] to pay the premium.

[Plaintiff's Complaint, ¶11 – Doc. 1].

Harleysville alleges, and RHI admits, that the Policy "does not identify any party as a mortgagee." [Plaintiff's Complaint, ¶ 12 – Doc. 1; Defendant's Answer, ¶ 12 – Doc. 16]. Furthermore, pursuant to the Policy's "Loss Payment" conditions[5], the Policy solely identifies "The Hammocks" as the "loss payee."

---

[5] Paragraph No. 2 of the Policy's "Loss Payment" conditions provides in pertinent part:

**Your Losses –** [Harleysville] will adjust all losses with [The Hammocks]. Payment will be made to [The Hammocks] unless another loss payee is named in the policy. An insured loss will be payable 30 days after a satisfactory proof of loss is received, and the amount of the loss has been established either by written agreement with [The Hammocks] or the filing of an appraisal award with [Harleysville].

5

On or about March 19, 2009, one of the buildings on the Richmond Hill Inn property, which was commonly known as "the Mansion", sustained damage as a result of a fire. [Plaintiff's Complaint ¶ 26 – Doc. 1; Defendant's Answer ¶ 26 – Doc. 16]. On that same day, The Hammocks tendered notice to Harleysville of its property damage claim under the Policy. [Plaintiff's Complaint ¶ 27 – Doc. 1]. Shortly thereafter, on March 25, 2009, The Hammocks sought bankruptcy protection from the United States Bankruptcy Court for the Western District of North Carolina by filing a voluntary petition pursuant to Chapter 11 of the United States Bankruptcy Code. [RHI's Counterclaims, ¶ 27 – Doc 16]. On September 11, 2009, RHI's counsel sent a letter to Harleysville's counsel demanding that Harleysville provide coverage to RHI under the Mortgage Clause in the Policy based on RHI's claim that it held a mortgagee interest in the Richmond Hill Inn property. [RHI's Counterclaims, ¶ 30 – Doc. 16].

For the reasons set forth below, Plaintiff Harleysville respectfully requests that this Honorable Court grant judgment to Harleysville on its claims and dismiss RHI's claim for status as a "mortgagee" under the Policy, pursuant to Federal Rule of Civil Procedure 12(c).

## III.    LEGAL ARGUMENT

### A.    Standard of Review

Federal Rule of Civil Procedure 12(c) provides, "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." In considering a motion for judgment on the pleadings under Fed.R.Civ.P. 12(c), the court must "base its decision solely on information obtained from the pleadings" but must also "view the facts presented in the pleadings and inferences drawn therefrom in the light most favorable to the non-moving party." *Atwater v. Nortel Networks, Inc.,* 394 F.Supp.2d 730 (M.D.N.C. 2005) (citations omitted). Nevertheless, the court in *Atwater* also held that the "defendant cannot

succeed on a motion for judgment on the pleadings when allegations in the plaintiff's pleadings would permit recovery if supported by sufficient proof." *Atwater*, at 731 (citations omitted). Although a motion for judgment on the pleadings is concerned principally with the adequacy of the allegations it challenges, *see Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008), the motion itself, by definition, implicates the pleadings in their entirety.  *See Curran v. Cousins*, 509 F.3d 36, 44 (1st Cir. 2007).

      **B.**      **<u>RHI Is Not Entitled to Insurance Coverage Under the Policy</u>**

      **i.**      **RHI Is Not Identified as a "Loss Payee" Under the Policy.**

Pursuant to the Policy's "Loss Payment" conditions, the Policy solely identifies "The Hammocks" as the "loss payee." Moreover, the "Loss Payment" conditions specify that "[Harleysville] will adjust all losses with [The Hammocks].  Payment will be made to [The Hammocks] unless another loss payee is named in the policy." In the instant matter, the Policy's terms and conditions do not refer to any "loss payee" other than The Hammocks.  Under North Carolina law, "[w]here the language of an insurance policy is clear and unambiguous, the courts must give the language used its, plain, natural and obvious meaning." *Williams v. Pyramid Life Ins. Co.,* 163 S.E.2d 400 (1968) (citations omitted). Taken further, in situations where the insurance policy's terms and conditions are clear and unambiguous, "the court's only duty is to determine the legal effect of the language used and to enforce the agreement as written." *Griswold v. Integon General Ins. Corp.,* 560 S.E.2d 861 (2002) (citations omitted).  In the case at hand, the plain reading of the Policy's "Loss Payment" provisions, which solely name The Hammocks as "loss payee", leads to the conclusion that RHI is not entitled to insurance coverage under the Policy.

### ii.     RHI Is Not Named as a "Mortgagee" Under the Policy.

RHI agrees that the Policy does not identify any party as a mortgagee. According to the Policy's "Mortgage Provisions", "[i]f a mortgagee (mortgage holder) is named in the policy, loss to building property will be paid to the mortgagee and [the policyholder] as their interest appears." Under a plain reading of the Policy, RHI's interest as a "mortgagee" does not appear anywhere in its terms or conditions. Furthermore, in North Carolina, "[t]he mere existence of the mortgage relationship does not in itself entitle the mortgagee to all or any part of the proceeds of insurance procured by the mortgagor." *Ormond Wholesale Co., Inc. v. Moore,* 54 B.R. 781, 783 (Bankr. E.D.N.C. 1985). In fact, in North Carolina courts recognize that "[t]he general rule is that unless a mortgagee is named as the 'loss payee' in a fire insurance policy contract, it will have no right to receive the insurance proceeds under that contract." *North Carolina Joint Underwriting Association v. Long, et al.,* 2008 WL 320150 (E.D.N.C. 2008) (citing *Ormond Wholesale, supra*). Based on the foregoing, RHI is not a "mortgagee" as that term is used in the Policy and it is not entitled to coverage under the Policy.

### iii.     RHI Is Not Identified as a "Mortgagee" Under The Hammocks' Insurance Application.

RHI is not recognized as a "mortgagee" in The Hammocks' sworn application of insurance. Pursuant to the completed application form, ACORD 125 (2005/06), submitted as part of The Hammocks' insurance application, the application indicates that there were no bankruptcies, *tax or credit liens* (emphasis added) against The Hammocks in the past five years. Moreover, pursuant to each of the ten pages of completed application forms, ACORD 140 (2002/09), also submitted as part of The Hammocks' insurance application, there were no references to any "additional interests", including but not limited to, any "loss payee mortgagee" interests, in relation to the ten buildings to be insured under the Policy. In fact, it was only after

The Hammocks submitted its notice of claim that Harleysville was first made aware that a Deed of Trust had been executed between The Hammocks and RHI, and that RHI had a purported mortgagee interest in the Richmond Hill Inn property.

## C. RHI's Misinterpretation of N.C.G.S. § 58-43-15

Notwithstanding the undisputed facts outlined above, RHI requests a judgment declaring that it is entitled to coverage from Harleysville under the Policy, pursuant to N.C.G.S. § 58-43-15. [*See* RHI's First Counterclaim, ¶ 7 – Doc. 16]. RHI argues that the provisions of N.C.G.S. § 58-43-15 require an insurer "to make payment to a mortgagee following a loss" in two circumstances: (1) where there is an agreement between the mortgagor and mortgagee to that effect; <u>or</u> (2) where the mortgagee is listed as a loss payee under the terms of the insurance policy." [RHI's First Counterclaim, ¶ 5 – Doc. 16]. RHI already admits that the second circumstance, *i.e.,* listing the mortgagee as loss payee under the terms of the insurance policy, does not apply here. [*See* Defendant's Answer, ¶ 12 – Doc. 16]. Therefore, RHI's only remaining contention is that, "Harleysville is required to pay RHI insurance proceeds associated with the destruction of the [insured property] because RHI, the Hammocks, and Gateway Park Properties, entered into 'an agreement' in the Deed of Trust[6] which required the Hammocks and

---

[6] The attached copy of the Deed of Trust provides in pertinent part:

INSURANCE. [The Hammocks and Gateway] shall keep all improvements on said land, now or hereafter erected, constantly insured for the benefit of the [RHI] against loss by fire, windstorm and such other casualties and contingencies, in such manner and in such companies and for such amounts, not less than that amount necessary to pay the sum secured by this Deed of Trust, and as may be satisfactory to [RHI]. [The Hammocks and Gateway] shall purchase such insurance, pay all premiums therefor, and shall deliver to [RHI] such policies along with evidence of premium payments as long as the Note secured hereby remains unpaid. If [The Hammocks and Gateway] fails to purchase such insurance, pay premiums therefore or deliver said policies along with evidence of payment of premiums thereon, then [RHI], at his option, may purchase such insurance. Such amounts paid by [RHI] shall be added to the principal of the Note secured by this Deed of Trust, and shall be due and payable upon demand of [RHI]. All proceeds from any insurance so maintained shall at the option of [RHI] be applied to the debt secured hereby and if payable in installments, applied in the inverse order of maturity of such installments or to the repair or reconstruction of any improvements located upon the Property.

Gateway to have fire insurance and required that all proceeds from any insurance be applied to the debt owed to RHI." [RHI's First Counterclaim, ¶ 6 – Doc. 16].

RHI's contention is simply incorrect and cannot be sustained for at least two reasons. First, it is based on a misreading of N.C.G.S. § 58-43-15. And second, it would allow RHI, a stranger to the insurance policy between Harleysville and The Hammocks, to enjoy greater rights against Harleysville than those held by The Hammocks based on an agreement to which Harleysville was not a party and of which Harleysville had no knowledge until after the loss.

### i. RHI Misinterprets N.C.G.S. § 58-43-15

RHI's position rests on the notion that the phrase "an agreement with the insured" at the beginning of this statute refers to "an agreement between the insured and the mortgagee." Thereby, RHI contends that the statute obligates an insurer to pay policy proceeds to a stranger to the policy based on an agreement to which the insurer was not a party and of which the insurer had no knowledge. [*See* RHI's First Counterclaim ¶¶ 2-6 – Doc. 16]. Indeed, in its pleadings RHI contends that Harleysville must pay RHI regardless of the merits of the insurance claim submitted by The Hammocks because RHI and The Hammocks had "an agreement" to this effect. *Id.* RHI's position misconstrues N.C.G.S. § 58-43-15.

N.C.G.S. § 58-43-15 provides:

> Where by an agreement with the insured, or by the terms of a fire insurance policy taken out by a mortgagor, the whole or any part of the loss thereon is payable to a mortgagee of the property for his benefit, the company shall, upon satisfactory proof of the rights and title of the parties, in accordance with such terms or agreement, pay all mortgagees protected by such policy in the order of their priority of claim, as their claims appear, not beyond the amount for which the company is liable, and such payments are, to the extent thereof, payment and satisfaction of the liabilities of the company under the policy. Any payment due by the insuring company to mortgagees or loss payees under the terms of the policy shall be made within 90 days of the loss or within 60 days of the filing of proof of loss, whichever is the longer period; provided, the payment of or settlement of the claim of the mortgagee or loss payee under the

policy shall in no way constitute an admission of liability as to the insured and the fact of such payment or settlement shall be inadmissible in any action at law.

N.C.G.S. § 58-43-15.

The reference to "an agreement with the insured" in N.C.G.S. § 58-43-15 can only refer to an agreement of "the company," i.e. the insurer (Harleysville in this instance), "with the insured."  As demonstrated below, substituting the names of the parties at issue into the statue demonstrates that Harleysville's reading of N.C.G.S. § 58-43-15 is correct and RHI's suggested reading of this statute is illogical.

> Where by an agreement with [The Hammocks] … the whole or any part of the loss thereon is payable to a mortgagee of the property for his benefit, [Harleysville] shall, upon satisfactory proof of the rights and title of the parties, in accordance with such terms or agreement, pay all mortgagees protected by such policy in the order of their priority of claim, as their claims appear, not beyond the amount for which [Harleysville] is liable, and such payments are, to the extent thereof, payment and satisfaction of the liabilities of [Harleysville] under the policy. …

"Company" in this context can only mean Harleysville and the reference to "an agreement" would only refer to an agreement between an insurer and insured which exists outside of the policy but which would require the insurer to protect mortgagees not named in the policy.  It is uncontroverted that there is no such agreement between Harleysville and The Hammocks here.[7]

The opening provisions of  N.C.G.S. § 58-43-15 actually mean that an insurer is required to protect a mortgagee's interests either (1) if the insurer has an agreement with its named

---

[7] There is no such agreement.  It has never been pled that an agreement (outside of the Policy) existed between The Hammocks and Harleysville nor could it as one does not exist.  Accordingly, Harleysville is only obligated to the terms of the policy.  The policy does not reference RHI as either a mortgagee or loss payee.  North Carolina law allows RHI to claim status as an "equitable lien".  In practical terms, that gives RHI the right to be paid those policy benefits that would be owed to The Hammocks and Harleysville strenuously denies that any funds are due to the Hammocks.

insured to do so, or (2) if the policy has a mortgage clause specifying that a named mortgagee is to be paid as a loss payee. In other words, the insurer must pay the mortgagee if the policy requires the insurer to do so or if the *insurer* has a separate "agreement" with its named insured to do so. In no event, however, is the insurer bound to pay an independent claim to an entity of which the insurer has no knowledge. Such rationale is in accordance with North Carolina precedent that a third-party to an insurance contract (*i.e.* RHI in this case) has no right to seek enforcement of the terms and conditions of a policy that exists strictly between an insurer and its insured. *See Whittaker v. Furniture Factory Outlet Shops,* 550 S.E.2d 822 (N.C.App. 2001) (an incidental third party beneficiary to an insurance policy "is without standing to seek enforcement of the covenant or a declaratory judgment as to its terms"); *Dement v. Nationwide Mutual Ins. Co.,* 544 S.E.2d 797, 801 (N.C.App. 2001) (same); *Terrel v. Lawyers Mut. Liabl. Ins. Co.,* 507 S.E.2d 923, 926 (N.C.App. 1998) (same). RHI is not a party to the Policy that exists between Harleysville and The Hammocks, and therefore, RHI has no right to seek enforcement of any of the Policy's terms and conditions in this action.

Furthermore, Chapter 58, articles 1 through 64, of North Carolina's General Statutes, otherwise known as "the Insurance Law", governs or regulates, *inter alia*, the activity of **insurance companies** in the State of North Carolina. Nothing in Chapter 58 suggests that any insurer has an obligation to a person or entity (or someone claiming policyholder status via separate "agreement") that is unknown to the insurer and is a stranger to the insurance policy.

North Carolina law does not treat a mortgagee as an insured under an insurance policy simply because the mortgagor may have agreed to obtain insurance for the benefit of the mortgagee. Where the mortgagor and mortgagee have reached such an agreement but the insurance policy does not reflect insurance for the benefit of the mortgagee, North Carolina law

holds that the mortgagee may have only an equitable lien on any insurance proceeds that the insured mortgagor may be entitled to receive, not an independent claim against the mortgagor's insurance company. *See Ormond Wholesale,* 54, B.R. at 783. In other words, "where the mortgagor is charged with the duty of taking out insurance for the benefit of the mortgagee, as between the parties to the contract, the mortgagee is entitled to an equitable lien on proceeds of the policy **obtained by the mortgagor**." *Wayne Nat. Bank v. National Bank of La Grange,* 147 S.E. 691 (N.C. 1929) (emphasis added). Taken further, if RHI's interpretation of N.C.G.S. § 58-43-15 were correct, the courts in *Ormond Wholesale* and *Wayne Nat. Bank* would not have had to grant the mortgagee an equitable lien. Following RHI's reading of the statute would have resulted in the conclusion that the insurer was obligated to pay insurance proceeds directly to the mortgagee. No equitable lien would have been necessary. Thus, the holdings in *Ormond Wholesale* and *Wayne Nat. Bank* directly refute RHI's position on the meaning of N.C.G.S. § 58-43-15.

Therefore, RHI's rights to insurance proceeds under the Policy are limited to any equitable lien it may have on proceeds actually obtained by The Hammocks as the named insured. For this reason, RHI's contention that it has an independent insured interest under the Policy simply based on its agreement with RHI (which agreement was never made known to Harleysville before the loss) has no support under North Carolina law.

> **ii.** **The Deed of Trust Between RHI and The Hammocks Does Not Give RHI Greater Rights Under the Harleysville Policy Than The Hammocks Might Have**

Even assuming, *arguendo*, that N.C.G.S. § 58-43-15 refers to an agreement between the named insured and a "mortgagee" about whom the insurer has no knowledge, the Deed of Trust between RHI and The Hammocks does not even provide that RHI will have an **independent**

claim under The Hammocks' insurance policy. Rather, the Deed of Trust language (quoted in full in footnote 6 herein and provided in the attachments hereto) provides that RHI will be paid **when and if The Hammocks has a valid insurance claim**. Consequently, even the Deed of Trust (the "agreement" in RHI's proposed formulation of the statute) does not afford RHI the right to an independent claim against The Hammocks' insurer, as RHI now desires. Rather, the Deed of Trust simply provides that RHI's interests will be protected when and if The Hammocks receives an insurance payment. Therefore, the Deed of Trust simply gives RHI an equitable lien on any insurance proceeds recovered by The Hammocks, a right which Harleysville does not dispute.

As this Court is aware, Harleysville does dispute, for multiple reasons, any notion that The Hammocks has a valid insurance claim. Nonetheless, if this Court determines that Harleysville has to pay The Hammocks' claim resulting from the fire, Harleysville could be obligated to protect RHI's interest as an equitable lien-holder. Therefore, Harleysville does not dispute the claims payment provisions provided in the Deed of Trust. However, RHI relies on its misinterpretation of N.C.G.S. § 58-43-15 to argue that it has an **independent** mortgagee claim that must be paid by Harleysville regardless of the outcome of the litigation between Harleysville and The Hammocks. In so doing, RHI seeks even greater protection and greater insurance coverage than what Harleysville would be obligated to provide to The Hammocks because RHI contends that it is entitled to payment *irrespective of The Hammocks' right to coverage*. If RHI were named as mortgagee on the Policy issued by Harleysville to The Hammocks, then RHI conceivably could have an independent claim, separate and apart from The Hammocks' claim. However, RHI is not so listed. Accordingly, it has no such independent claim.

14

### iii. RHI's Interpretation of N.C.G.S. § 58-43-15 Would Place The Added Burden On Insurers To Investigate Agreements Between its Insureds and Unknown Third Parties to Determine Whether The Insurer May Have an Obligation to Such Third Parties

If this Court were to accept RHI's position regarding a mortgagee's independent rights under an insurance policy in which it is not identified as a loss payee or insured, the result would have a burdensome impact on insurance companies by requiring them to conduct title checks, obtain affidavits, and secure other documentation to ensure that they are aware of all outside agreements regarding the insured property and/or involving the insured when underwriting property insurance coverage. Thus, an insurer could not rely on the sworn application of its insured stating that no such mortgagee existed (as Harleysville reasonably did here). Such result would be contrary to the well recognized principle in North Carolina that an insurer is allowed to (indeed expected to) rely on the representations made by an insured in a sworn application for insurance. *See Inman v. Sovereign Comp, W.O.W.,* 189 S.E. 496, 497 (N.C. 1937) (insurer had right to rely upon statements and representations contained in application signed by the insured); *Liberty Mut. Ins. Co. v. Year Round Pool, Inc.,* 104 F.3d 359 (4TH Cir. 1996) (unpublished opinion) (holding that "the very purpose of an application for insurance is to provide information upon which the insurer can rely"); *Jones v. Durham Life Ins. Co.,* 966 F.2d 1442 (4TH Cir. 1992) (unpublished opinion) (holding "insurer has the right to rely on the representations made by an insured in an application). Furthermore, the insurer would be obligated to pay an unknown and undisclosed mortgagee (regardless of the validity of the claim of the named insured) even though that mortgagee never asked the insurer to be named to the policy and, as here, never made itself known to the insurer until after the loss for which coverage is sought. Accordingly, RHI's right

to proceeds under the Policy rises and falls on whether The Hammocks (the only party with whom RHI actually contracted concerning insurance coverage) has any such right.

## IV.    CONCLUSION

RHI is not named as a "loss payee" nor a "mortgagee" under the Policy issued to The Hammocks.    RHI was not identified on the sworn insurance application submitted to Harleysville.  Finally, neither N.C.G.S. § 58-43-15 nor the Deed of Trust between RHI and The Hammocks affords RHI an independent right to insurance coverage under the Harleysville policy.  Consequently, RHI has no claim against the Harleysville policy independent of the claim of The Hammocks.  RHI's interest in the Policy is limited to an equitable lien on any proceeds that The Hammocks might recover.

For the reasons set forth above and in the underlying Motion, Plaintiff Harleysville respectfully requests, pursuant to Federal Rule of Civil Procedure 12(c), that this Honorable Court (1) grant the requested relief in Harleysville's Complaint and issue a declaration that RHI is not a "mortgagee" as defined in the Policy and is not entitled to recover under the Policy independent of the claim of The Hammocks; and, (2) dismiss RHI's First Counterclaim, with prejudice.

This the 7TH day of May, 2010.

                                    /s/ David L. Brown
                                    David L. Brown
                                    N.C. State Bar No. 18942
                                    dbrown@pckb-law.com
                                    Brady A. Yntema
                                    N.C. State Bar No. 25771
                                    byntema@pckb-law.com
                                    PINTO COATES KYRE & BROWN,  PLLC
                                    3203 Brassfield Road
                                    Greensboro, NC  27410
                                    Telephone: 336.282.8848
                                    Facsimile: 336.282.8409

                                    Michael R. Nelson
                                    Pa. State Bar No. 65679
                                    NELSON, LEVINE, de LUCA & HORST
                                    518 East Township Line Rd.
                                    Suite 300
                                    Blue Bell, PA  19422

                                    Douglas Y. Christian
                                    Pa. State Bar No. 41934
                                    BALLARD SPAHR, LLP
                                    1735 Market Street, 51st Floor
                                    Philadelphia, PA  19103-7599

                                    *Attorneys for Plaintiff Harleysville Mutual*
                                    *Insurance Company*

17

## CERTIFICATE OF SERVICE

The undersigned certifies that the document to which this Certificate is affixed was served upon the party(s) to this action by means of the Electronic Filing System of the United States District Court for the Western District of North Carolina on May 7, 2010.

/s/ Brady A. Yntema
Brady A. Yntema
N.C. State Bar No. 25771
byntema@pckb-law.com
PINTO COATES KYRE & BROWN, PLLC
3203 Brassfield Road
Greensboro, NC 27410
Telephone: 336.282.8848
Facsimile: 336.282.8409
*Attorney for Plaintiff Harleysville Mutual*
 *Insurance Company*

18