UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL ACTION NO.: 1:09-cv-00377

| | |
|---|---|
| HARLEYSVILLE MUTUAL INSURANCE COMPANY,<br>Plaintiff and Cross-Defendant,<br><br>vs.<br><br>RICHMOND HILL, INC.,<br>Defendant and Cross-Claimant. | **RICHMOND HILL, INC.'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS** |

NOW COMES the Defendant and Cross-Claimant Richmond Hill, Inc. (hereinafter, "Richmond Hill"), through counsel, and hereby submits the following Response in opposition to Plaintiff Harleysville Mutual Insurance Company's (hereinafter, "Harleysville") Motion for Judgment on the Pleadings:

### I. INTRODUCTION

This Court should deny Harleysville's Motion for Judgment on the Pleadings because N.C.G.S. § 58-43-15 (2010) requires Harleysville to protect RHI's mortgagee's interest if there is an agreement to such effect "with the insured." Harleysville does not dispute that the insured, The Hammocks, LLC, (hereinafter, "The Hammocks"), as mortgagor, agreed to insure the property for the benefit of RHI, its mortgagee. To the extent the statute is not clear as referring to an agreement between a mortgagee and mortgagor versus an agreement between an insurer and a mortgagor, any such ambiguity should be interpreted in favor of coverage for RHI. An interpretation in favor of coverage is consistent with the statute's title – "Policies for the benefit

of mortgagees" – and the 2008 North Carolina required Standard Fire Insurance Policy provisions.

In the alternative, this Court should convert Plaintiff's Motion into a motion for summary judgment and defer any ruling until discovery has ended and RHI has a reasonable opportunity to respond. Harleysville's Motion is supported by matters outside of the pleadings regarding Harleysville's and its agent's actual or constructive knowledge of RHI's mortgagee interest at the time it issued the Policy and RHI has not had an opportunity to conduct discovery about that issue.

## II.  STANDARD OF REVIEW AND FACTUAL BACKGROUND

Under Federal Rule of Civil Procedure 12(c), "[i]n resolving a motion for judgment on the pleadings, the court must accept all of the nonmovant's factual averments as true and draw all reasonable inferences in its favor." Dorman v. Grain Dealers Mut. Ins. Co., 2010 U.S. Dist. LEXIS 36254 (W.D.N.C. Mar. 17, 2010) (internal citations omitted); Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., 386 F.3d 581, 589, n. 3 (4th Cir. 2004). Where an insurance policy is "integral to and explicitly relied upon in the complaint," the policy itself should be considered **along with the factual allegations of the complaint and answer**." Id. (citing Colin v. Marconi Commerce Sys. Employees' Retirement Plan, 335 F. Supp. 2d 590, 596 (M.D.N.C. 2004) (emphasis added).

In light of the Rule 12(c) standard, the following facts – with reasonable inferences drawn in RHI's favor – must be accepted as true for purposes of Harleysville's Motion:

1. The Hammocks applied for insurance from Harleysville in September of 2008. Documents relating to the application process are attached to Plaintiff's Complaint at

Exhibit D (the "Purported Application"), filed with this Court at Doc. 1-6 (filed 10/05/09).[1]

2. Harleysville issued the insurance policy to the Hammocks on October 19, 2008, policy number 0F-3M2977 (hereinafter, "the Policy").  Doc. 1-1 (filed 10/05/09), p. 2, ¶ 6.

3. The Policy insured the property at 87 Richmond Hill Drive, Asheville, North Carolina 28806 (the "Property").  Doc. 1-1, p. 2, ¶ 10.

4. At this time, it is not known whether there are additional application materials or documents relating to the Purported Application or the Policy.

5. One or more of Harleysville's agents solicited and input the information for the Purported Application from the Hammocks.  Doc. 16 (filed 12/11/09), p. 8, ¶ 18, 20.

6. One or more of Harleysville's agents was already familiar with the Property prior to the Hammock's application for the Policy. Id. at p. 8, ¶ 20-22.

7. One of Harleysville's agents wrote the following statement in the Purported Application: "This is an exceptional property and I've worked with them for going on **four years** now. Please let me know if you have any questions. [Name and phone number listed.] " Doc. 1-6, p. 7 (emphasis added).

8. At this time, the nature and extent of Harleysville's agent's four-year knowledge of the Property is not known.

9. Harleysville's agent's note indicates that she was familiar with the property when it was owned by RHI, which was up until October of 2005.  Doc. 16, ¶ 10; Doc. 1-6, p. 7.

10. Harleysville's agent also noted the following in the Purported Application:  "This is an excellent property and account. I lost the package last year due to the company prior not willing to reduce the values to reflect what the owner perceived to be the correct replacement costs."   Doc. 1-6, p. 5.

11. At the time Harleysville's agent(s) solicited information for the Insurance Policy and when the Policy was issued, RHI's mortgagee interest was a matter of public record and available online at the Buncombe County Register of Deeds website. Doc. 16, p. 6 ¶ 2, p. 7, ¶ 10-15; Doc. 16-3.

12. The recorded Deed of Trust securing RHI's mortgage interest required that the property be insured for RHI's benefit.  Doc. 16-1, p. 7, ¶ 16; Doc. 16-3.

13. Harleysville's agent(s) knew or should have known about RHI's mortgagee interest on the Property.  Doc. 16-1, p. 11, ¶ 5.

---

[1] Pursuant to Local Rule 7.1(c)(3), exhibits previously filed with this Court are not being re-filed but are incorporated by reference to the docket entry, exhibit number, and page number.

14. In spite of their actual or constructive knowledge, Harleysville and its agents failed to list any mortgagees for the Property when processing the Purported Application and issuing the Policy. Id. at p. 11, ¶ 7.

15. In spite of their actual or constructive knowledge, Harleysville failed to list any mortgagees for the Property on the Policy it issued. Id. at p. 11, ¶ 7-8.

16. Neither the Purported Application nor the Policy contains statements that no mortgagee exists. Doc. 1-1, Doc. 1-2, Doc. 1-3, Doc. 1-16.

17. The Policy does not contain the following mortgage clause (hereinafter, the "**NC Mortgage Clause Provision**")[2] required by N.C.G.S. § 58-44-15 (2008), repealed by Session Laws 2009-171, s. 6 (effective January 1, 2010 and applicable to fire insurance policies issued or renewed on and after that date). Id. at p. 5, ¶ 3.[3]

18. The NC Mortgage Clause Provision provides as follows:

> Mortgage Clause: Subject to the provisions of the mortgage clause attached hereto, loss, if any, on building items, shall be payable to:
>
> (INSERT NAME(S) OF MORTGAGEE(S) AND MAILING ADDRESS(ES))
>
> Countersignature Date _____ Agency at _____ Agent _____

(A complete copy of the form containing the NC Mortgage Clause Provision in effect in 2008 was filed with RHI's Answer and Counterclaim at Doc. 16-1.)

19. The Harleysville's Policy contains the following provision regarding payments to mortgagees (hereinafter, the "**Standard Mortgage Clause**"): "The insurance for the mortgagee continues in effect even when 'your' insurance may be void because of 'your' acts, neglect, or failure to comply with the coverage 'terms.'" Doc. 1-3, p. 3.

20. There is no exclusion in the Policy that prohibits coverage to unlisted mortgagees. Doc. 1-1, Doc. 1-2, Doc. 1-3.

21. There is no requirement in the Policy that mortgagees must be named in order to be covered. Id. (The policy does provide for how proceeds are to be shared if multiple mortgagees are named and the manner in which the insurer must inform named mortgagees of any cancellation of the policy. Doc. 1-3, p. 3.)

---

[2] The new Standard Fire Insurance provisions are codified at § 58-44-16 (2010). They were not in effect at the time this Policy was issued.

[3] Harleysville denies this. Doc. 20 (filed 12/30/09), p. 2, ¶ 5. In its denial, Harleysville refers the Court to the Standard Mortgage Clause found in its Policy at Doc. 1-3, p. 3. However, the NC Mortgage Clause Provision and the Standard Mortgage Clause are two different provisions. Only the former is required by statute. It serves the purpose of putting all interested parties on notice of what mortgagees – if any – are protected by mortgage clauses, "if any," found in the policy.

22. Discovery has not commenced and the Initial Attorneys Conference has been delayed pending this Court's ruling on RHI's Motion to Transfer filed on December 11, 2009. Doc. 25 (filed 3/18/10) and the Court's Text-Only Order entered March 19, 2010.

RHI disputes Harleysville's characterization of the facts. Harleysville states that because the Purported Application and Policy are referenced in their pleadings and "integral to the allegations therein," then they are "deemed incorporated in the pleadings by reference" and may be relied on in Harleysville's Motion. Doc. 28, p. 1, note 1, p. 3, note 4, p. 4. The case of Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999), cited by Harleysville for this proposition limits consideration of an outside document to instances where the nonmovant does "not challenge its authenticity." As set forth above, however, RHI raises several factual issues which bear on the veracity of the Purported Application materials and the use of those materials for issuing the Policy, including the knowledge of Harleysville's agents of RHI's mortgagee interest. Contra Thomas v. Hartford Life & Accident Ins. Co., 2003 U.S. Dist. LEXIS 19389 (W.D.N.C. Sept. 3, 2003) (considering applicable insurance policy in 12(c) motion because it was referred to in complaint and nonmovant did not challenge its authenticity).

### III. ARGUMENT

#### A. Harleysville's Motion for Judgment on the Pleadings should be denied.

The provisions of North Carolina's statute governing fire insurance policies, N.C.G.S. § 58-43-1 (2008), *et seq*, and the statute governing property insurance policies, N.C.G.S. § 58-44-1 (2008), *et seq*, govern the Harleysville's Policy and require that Harleysville apply the fire insurance proceeds to RHI's mortgagee interest. N.C.G.S. § 58-43-15 relates to contracts for fire insurance and provides that:

> **Where by an agreement with the insured,** or by the terms of a fire insurance policy taken out by a mortgagor [the Hammocks], the whole or any part of the loss thereon is payable to a mortgagee [RHI] of the property for his benefit, the company [Harleysville] shall, upon

>satisfactory proof of the rights and title of the parties, in accordance with such terms or agreement, pay all mortgagees protected by such policy . . .
>(emphasis added)

RHI interprets this statute as requiring Harleysville to make payment to a mortgagee like RHI following a loss in two circumstances: (1) where there is an agreement between the mortgagor and mortgagee to that effect; or (2) where the mortgagee is listed as a loss payee under the terms of the policy. Harleysville is required to pay RHI insurance proceeds associated with the destruction of the Mansion because RHI and the Hammocks entered into "an agreement" in the Deed of Trust dated October 10, 2005 which required the Hammocks to have fire insurance and required that all proceeds from that insurance be applied to the debt owed to RHI. Doc. 16, ¶ 16.

Harleysville interprets this statute differently by reading in an additional limitation that only listed mortgagees in a Policy are protected. The issue of whether this statute protects mortgagees when the insured agrees to do so and the Policy contains a Standard Mortgage Clause – regardless of whether the mortgagees are listed in the Policy – is a matter of first impression in North Carolina. The facts of this case also pose another issue of first impression for the Court: what are the consequences when an insurer fails to use the State-required standard fire insurance policy (N.C.G.S. § 58-44-15 (2008)) (including the NC Required Mortgage Provision) and then partly relies on this failure to argue for narrower coverage? The two issues are necessarily intertwined because an underlying assumption of N.C.G.S. § 58-43-15, applicable to "fire insurance policies," is that the North Carolina standard fire insurance policy was used when this Policy was issued. Based on the purpose the statute is meant to remedy and applicable rules of interpretation, this statute should be interpreted as covering RHI's interest.

### 1. Section 58-43-15 of North Carolina's Fire Insurance Statute was intended to be for the "benefit of mortgagees" and should be liberally construed to effectuate its purpose.

RHI contends that the statute requires fire insurers to protect a mortgagee's interest if there is an agreement between the mortgagor and mortgagee to that effect. To the extent that the statute is unclear by failing to identify with whom the "agreement with the insured" must be – the insurer or the mortgagee – then the statute is ambiguous. "[T]he ambiguities would, of course, have to be construed against the insurer under fundamental principles of law." Payne v. Buffalo Reinsurance Co., 317 S.E.2d 408, 410, 69 N.C. App. 551, 553-554 (1984) (discussing the subrogation remedies available to mortgagor under North Carolina's standard fire insurance policy) (interpreting former version of statute at N.C.G.S. § 58-176); Smith v. National Fire Ins. Co., 95 S.E. 562, 564, 175 N.C. 314, 317 (N.C. 1918) (stating the rule "that contracts of insurance are construed against the insurer and in favor of the insured, and this has not been changed by the adoption of standard form of [fire] insurance"). Furthermore, in North Carolina, "provisions of insurance policies and compulsory insurance statutes which extend coverage must be construed liberally so as to provide coverage, whenever possible by reasonable construction." State Capital Ins. Co. v. Nationwide Mut. Ins. Co., 350 S.E.2d 66, 68, 318 N.C. 534, 538 (N.C. 1986) (internal citations omitted).

Here, N.C.G.S. § 58-43-15 should be construed liberally in favor of providing fire insurance coverage for mortgagees like RHI. This interpretation is consistent with the title of this section: "Policies for the **benefit of mortgagees**." Id. (emphasis added). See, e.g., In re Hickerson, 71 S.E. 2d 129, 132, 235 N.C. 716, 721 (N.C. 1952) ("if the meaning of a statute be in doubt, reference may be had to the title and context as legislative declarations of the purpose of the act"); In re Banks, 244 S.E.2d 386, 389, 295 N.C. 236, 239-240 (N.C. 1978) (holding that

legislative intent may be derived from a variety of sources, including the purposes appearing from the statute, the mischief to be remedied, statutes *in pari materia*, and its title).

The Court should not read into the statute Harleysville's proposed additional limitations that only require it to protect a mortgagee's interest "(1) if the insurer has an agreement with its <u>named</u> insured to do so, or (2) if the policy has a mortgage clause specifying that a <u>named</u> mortgagee is to be paid as a loss payee." Pl.'s Memo., Doc. 28, p. 11-12 (emphasis added). The statute does not contain the additional limitation that only "named" mortgagees have an interest. N.C.G.S. § 58-43-15. If the legislature intended such a limitation, it could easily have inserted this language. Moreover, Harleysville's Policy does not contain a specific requirement that mortgagees be "named" to be protected or an exclusion barring coverage for unnamed mortgagees. Doc. 1-1, Doc. 1-2, Doc. 1-3. Any ambiguity in the Policy should be resolved against the insurer, who selected the words in it. <u>Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, L.L.C.</u>, ____ N.C. ___, 2010 N.C. LEXIS 344, \*\*16-17 (N.C. Apr. 15, 2010); <u>Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co.</u>, 172 S.E.2d 518, 522, 276 N.C. 348, 354 (1970).

The interpretation Harleysville requests also begs the question of why it included a Mortgage Clause in its Policy protecting mortgagees from the insured's "acts, neglect, or failure to comply the coverage terms" if no unnamed mortgagees could ever recover under the Policy? Doc. 1-3, p. 3. The suggestion from the statute and the Policy is that all mortgagees that have an agreement with the insured are covered, regardless of whether they are named, with the extent of coverage depending on their respective priorities. See <u>Allstate Ins. Co. v. Chatterton</u>, 518 S.E.2d 814, 816, 135 N.C. App. 92, 95 (1999) (stating rule of construction that where language used in the policy is reasonably susceptible to more than one interpretation, the policy must be construed

R&S 759731-1

8

Case 1:09-cv-00377-MR-DLH   Document 29   Filed 05/24/10   Page 8 of 20

in favor of coverage and against the insurer). Therefore, N.C.G.S. §§ 58-43-15 and the Policy should be construed as providing coverage for RHI. State Capital Ins., 350 S.E.2d at 68.

### 2. Section 58-43-15 should be read *in pari materia* with the requirement in N.C.G.S. § 58-44-15 that the Policy include the NC Mortgage Clause Provision, which Harleysville failed to include.

Coverage for RHI under Harleysville's Policy is further supported by N.C.G.S. § 58-44-15 (2008), *supra*. In that statute, the North Carolina General Assembly created a standard fire insurance policy required to be used in every policy issued in North Carolina for the time period applicable to this action. N.C.G.S. § 58-44-15(c) (2008), *supra*, Doc. 16-1. Insurance policies issued in North Carolina must "conform[] in substance with all of the provisions, stipulations, agreements, and conditions of the policy form in [§ 58-44-15(c)]." N.C.G.S. § 58-44-15(a). See also Huggins v. Hartford Ins. Co., 650 F. Supp. 38, 39 (E.D.N.C. 1986).

With respect to the statutorily required terms for fire insurance contracts, the North Carolina Supreme Court has stated:

> They are inserted in the policy, not by the company or by the plaintiff, but by the statute. **To fail to give them force and effect is to nullify the statute.** These stipulations and provisions are included in the policies, and unless waived as provided therein, must and will be enforced. A provision in the policy of defendant Insurance Company is as follows: It is understood and agreed where the printed conditions of this policy are in conflict with the conditions of the standard fire and lightning policy of any State or territory where this contract is to be performed, then and in that event the standard policy of such State or territory shall control and govern the construction of the printed portion of this policy, etc.

Buckner v. United States Fire Ins. Co., 184 S.E. 520, 524, 209 N.C. 640, 646 (N.C. 1935) (citing earlier version of statute at § 6437 (1935)) (interpreting subrogation provision) (internal quotations and citations omitted) (emphasis added).

At the time Harleysville provided the Policy at issue here, it was required to include the NC Mortgage Clause Provision. The NC Mortgage Clause Provision requires that the insurer

include a place on the Policy to list (or leave blank) the mortgagees. Doc. 16-1, p. 1. Presumably, the purpose of such a provision is to put all interested parties on notice as to which insured interests are covered and which may not be covered. Harleysville's Policy does not include this provision and thus does not meet the requirements of N.C.G.S. § 58-44-15. See Doc. 1-1, Doc. 1-2, Doc. 1-3.[4]

N.C.G.S. §§ 58-43-15 and 58-44-15 must be read *in pari materia* because § 58-43-15 specifically applies to "fire insurance polic[ies] taken out by a mortgagor" and, therefore, it would be presumed that any such policy would conform with N.C.G.S § 55-44-15(c) and the NC Mortgage Clause Provision. See, e.g., Board of Adjustment v. Town of Swansboro, 432 S.E.2d 310, 313, 334 N.C. 421, 427 (1993) ("[s]tatutes dealing with the same subject matter must be construed *in pari materia* and harmonized, if possible, to give effect to each"); see also N.C.G. S. § 58-44-20 (2008) (listing all "permissible variations" from the standard form and barring all other variations; no variation regarding the mortgagee clause allowed); Boyd v. Bankers & Shippers Ins. Co., 96 S.E.2d 703, 709, 245 N.C. 503, 510 (1957) (stating that the standard fire insurance policy "provisions have been held by this Court to be valid and just to insured and insurer"); Star Varifoam Corp. v. Buffalo Reinsurance Co., 307 S.E.2d 194, 195, 64 N.C. App.

---

[4] In support of this argument, Harleysville cites the "Standard Mortgage Clause" and "Loss Payment" provisions in its Policy. The first states that "[t]he insurance for the mortgagee continues in effect even when 'your' insurance may be void because of 'your' acts, neglect, or failure to comply with the coverage 'terms.'" Doc. 1-3, p. 3. The terms "mortgage" and "mortgagee" are not defined in the Policy. The term "your" is defined to "mean the persons or organizations named as the insured on the 'schedule of coverages.'" Doc. 1-2, p. 2. There is no section in the "schedule of coverages" like the NC Mortgage Clause Provision or that would otherwise indicate the existence of a mortgagee or loss payees (or lack thereof). Doc. 1-1, p. 4.

Harleysville also states that the "Loss Payment" provision in the Policy solely identifies "The Hammocks" as the "loss payee" in the Policy. Doc. 28, p. 5 and note 5. However, the Policy provision quoted by Harleysville for this proposition does not list anyone as a loss payee and would read no differently if RHI had been listed in the Policy. It states as follows: "Your Losses – 'We' will adjust all losses with 'you.' Payment will be made to 'you' unless another loss payee is named in the policy. An insured loss will be payable 30 days after a satisfactory proof of loss is received, and the amount of the loss has been established either by written agreement with 'you' or the filing of an appraisal award with 'us.'" Document 1-3, p. 1. It would be inequitable to allow Harleysville to rely on these provisions where doing so allows it to benefit from its failure to comply with North Carolina law by omitting the NC Mortgage Clause Provision from its Policy.

306, 309 (1983) (holding that the statutory Standard Fire Insurance Policy is incorporated into every policy of fire insurance issued in North Carolina).

For these reasons, this Court should reform Harleysville's Policy to bring it into compliance with N.C.G.S. § 58-44-15(c) and insert RHI as a mortgagee. To hold otherwise would allow Harleysville to escape its obligations as an insurer in this State under N.C.G.S. § 58-44-1, *et seq*, and "nullify the statute." Buckner, 184 S.E. at 524. It also would undermine N.C.G.S. § 58-43-15, which presumes that the North Carolina standard fire insurance policy has been used.

### 3. RHI has standing to seek its protection as a mortgagee pursuant to N.C.G.S. § 58-43-15.

Harleysville argues in its brief that RHI does not have standing to enforce the terms of the Policy because it is a third-party to the contract. Pl.'s Memo., Doc. 28, p. 12. RHI disagrees based on its interpretation of N.C.G.S. § 58-43-15. This insurance statute – written "for the benefit of mortgagees" – should be construed liberally to provide coverage by reasonable construction and thereby giving RHI standing to protect its interest. State Capital, 350 S.E.2d at 68. Notwithstanding its independent claim for relief under the statute, RHI should be treated as a third-party beneficiary under the Policy.

In North Carolina, third-party beneficiaries not in privity of contract may bring an action in their own name to enforce a contract made for their benefit. Carl v. State, 665 S.E.2d 787, 794, 192 N.C. App. 544, 551 (2008) (internal citations omitted). A third-party beneficiary has standing if the contract is made for the direct – as opposed to incidental – benefit. See, e.g., LSB Fin. Servs. v. Harrison, 548 S.E.2d 574, 579, n. 1, 144 N.C. App. 542, 549 (2001). Under certain circumstances, North Carolina courts will impute an insurance agent's knowledge to the insurer. See, e.g., Durham v. Cox, 310 S.E.2d 371, 375-76, 65 N.C. App. 739, 745 (1984); Fireman's

R&S 759731-1

11

Case 1:09-cv-00377-MR-DLH   Document 29   Filed 05/24/10   Page 11 of 20

Fund Ins. Co. v. Rowland Lumber Co., 119 S.E. 362, 363, 186 N.C. 269 (1923) ("the knowledge of the local agent of an insurance company is, in law, the knowledge of the principal"). The insurer's knowledge may then prevent it from relying on provisions in the insurance contract as a defense to an action on the policy. Durham, 310 S.E.2d at 375-76; Houck v. American Eagle Fire Ins. Co., 151 S.E. 628, 198 N.C. 303 (1930) (holding that insurer had waived fee simple ownership requirement in its fire insurance policy because its agent knew that the insureds held only a life estate in the property when the policy was issued and the agent's knowledge was imputed to the insurer); Fireman's Fund, 119 S.E. at 363 (holding that an insurer may waive conditions in a policy working a forfeiture and that such waiver may be presumed from the acts of the agent).

At this time, construing the facts in RHI's favor, Harleysville's agent knew about RHI's mortgagee interest, Harleysville's agent knew the mortgagor was obtaining the policy for RHI's benefit, and the mortgagor and Harleysville entered into the insurance contract for RHI's direct benefit. This makes RHI an intended beneficiary rather than incidental one. Therefore, in addition to its claim under N.C.G.S. § 58-43-15, RHI has standing to bring this action and Harleysville has "impliedly waive[d] or [is] estopped to deny" RHI's mortgagee interest under the Policy. Durham, 310 S.E.2d at 376.

### 4. The cases cited by Harleysville requiring that a mortgagee be named are distinguishable because the insurers in those cases did not deny coverage to the mortgagee.

The cases cited by Harleysville, N.C. Joint Underwriting Ass'n v. Long, In re Moore, and Wayne Nat'l Bank v. Nat'l Bank, *infra*, as requiring that a mortgagee be named to be protected are distinguishable. Unlike the present case, none of the insurers in those cases contested or raised any defenses to insurance coverage. Consequently, the courts did not have to address the

applicability of N.C.G.S. § 58-43-15 to unnamed mortgagees since the insurance proceeds were available to the mortgagees under an equitable lien theory. Rather, the issue for the courts in each of these cases was related to the priority of interests between different lien holders against the insurance proceeds.

Harleysville cites N.C. Joint Underwriting Ass'n v. Long, 2008 U.S. Dist. LEXIS 7333 (E.D.N.C. 2008) to support its argument that unnamed mortgagees are not covered by the Policy. In that case, the insureds were indebted to the IRS for taxes and later became indebted to the Lewises as a result of a state court judgment. The insureds' deed of trust required them to insure the property for the Lewis's benefit. The insureds did not list anyone as a loss payee in their policy. A fire later destroyed the property and the insurance company deposited its proceeds with the court. In addition to the Lewises, other creditors, including the IRS, had claim to the proceeds. The primary issue before the court was "whether the hazard insurance proceeds constitute 'property' or 'rights to property' to which the IRS's lien [could] attach" and, if so, the resulting priority between the creditors. Id. at **10-16.

After determining that the IRS lien had priority over the Lewises' promissory note, the court considered whether the Lewises' had an equitable lien and concluded that they did. In so doing, the court stated that "[t]he general rule is that unless a mortgagee is named as the 'loss payee' in a fire insurance policy contract, it will have no right to receive the insurance proceeds under that contract." Id. at *25 (citing In re Moore, 54 B.R. 781, 783 (Bankr. E.D.N.C. 1985); Wayne Nat'l Bank v. Nat'l Bank, 147 S.E. 691, 692, 197 N.C. 68 (N.C. 1929)). Long and the cases cited for this "general rule" of North Carolina, however, do not apply because the insurer in those cases did not deny coverage and no parties asserted claims under N.C.G.S. § 58-43-15 or its predecessors.

There was also no dispute of insurance coverage and no party asserted a claim under N.C.G.S. § 58-43-15 in In re Moore, 54 B.R. at 783. There, <u>before the deed of trust was executed</u>, the mortgagors already had insurance coverage on their building and personal property. Id at 783. Subsequently, the mortgagors borrowed money from a mortgagee and the deed of trust required the mortgagors to insure their store's personal property for the benefit of the mortgagee. Id. at 782. However, the mortgagors "did not understand the need to add" the mortgagee to the policy, so he was never named as a loss payee. A fire later destroyed the property and the mortgagors filed for bankruptcy. The issue before the court was not whether the fire insurance proceeds were available, but whether the mortgagee could enforce an equitable lien against the mortgagors as "debtors in possession." Id. at 783. The court ultimately concluded that the mortgagee had an equitable lien on the insurance proceeds to the extent of the debt that took priority over the debtors in possession. Id. at 784.

In *dicta*, the Moore court actually noted a variety of instances in which a mortgagee has an interest in fire insurance proceeds, two of which apply here:

> [A] mortgagee has no interest in the proceeds unless [1] he is named in some way in the contract of insurance [; 2] **or in the mortgage as being entitled to the proceeds of the insurance**, [3] or unless the policy has been assigned to him, [5] or the mortgagor has agreed with him that he is entitled to the proceeds, **or** [6] **the mortgagor agreed to procure the insurance for his benefit**.

Id. at 783 (Bankr. E.D.N.C. 1985) (emphasis added) (internal citations omitted). The language in bold, from a treatise, mirrors what has been codified in North Carolina – "Policies for the benefit of mortgagees" – N.C.G.S. 58-43-15 – which provides coverage to a mortgagee "[w]here by an agreement with the insured" the proceeds are to be paid for the mortgagees benefit. Id.

In Wayne Nat'l Bank v. Nat'l Bank, 147 S.E. 691, 197 N.C. 68 (1929), the debtor delivered mortgages to the prior owner and a bank. Both deeds of trust contained the

requirement that the owner carry fire insurance for the benefit of the mortgagee. The debtor obtained multiple fire insurance polices, and attached to each of them was a Standard Mortgage Clause which provided that loss would be payable to the named banks. See prior history at 1929 N.C. LEXIS 148, **1-4. Unlike here, the insurer did not deny coverage to the insureds or the mortgagee; rather, the issue for the court was the priority of the two banks' interest and the division of the proceeds between them. The court concluded that the bank listed first in the mortgage clause had priority over the second. 147 S.E. at 693.

In its Memorandum, Harleysville states that RHI could only have an equitable lien in the insurance proceeds because the Policy does not name it as a "loss payee." Doc. 28, p.12-13 (citing In re Moore, 54 B.R. at 783 (citing Wayne Nat'l Bank, 147 S.E. at 692). However, the statement from Wayne Nat'l Bank must be viewed in the context of that case. There, the North Carolina Supreme Court used the term "equitable lien" to describe the interest of the mortgagee even though it was named in the policy. Id. at 692-93; 1929 N.C. LEXIS 148, **1-4.

> **B. In the alternative, Harleysville's Motion for Judgment on the Pleadings should be converted into a Motion for Summary Judgment and denied without prejudice to be refiled after discovery has closed.**

To the extent this Court will consider the factual issues raised by Harleysville that go beyond its unverified Complaint or other pleadings or that relate to facts in dispute, Harleysville's Motion should be converted into a summary judgment motion. F.R.C.P. 12(d). Any consideration of whether summary judgment should be granted should be deferred until after discovery has closed and after RHI has been "given a reasonable opportunity to present all the material that is pertinent to the motion." F.R.C.P. 12(d); see GmbH v. Design Indus., 2008 U.S. Dist. LEXIS 31150, *8 (M.D.N.C. Mar. 20, 2008). Here, discovery has not commenced by agreement of the parties and pursuant to this Court's Order that the Initial Attorneys Conference

be postponed until RHI's Motion to Transfer this action to Bankruptcy Court is reached. Doc. 25 (filed 3/18/10) and the Court's Text-Only Order (entered 3/19/10).

Harleysville raises factual issues in its Memorandum of Law that go beyond the pleadings. First, Harleysville states that "the terms of [the Purported Application] were not otherwise denied by RHI . . ." Doc. 28, p. 3, note 4. However, RHI denied that the exhibit attached by Plaintiff was the application because of insufficient information. Doc. 16, p. 3, ¶ 19. At this time, RHI does not know whether the Purported Application materials are complete. Moreover, there are issues of fact as to whether the insurance agent who sold the Policy knew or should have known about RHI's mortgagee interest when she gathered information for the Application and there are issues of fact about whether Harleysville knew or should have known about RHI's mortgagee interest when the Policy was issued. As alleged in RHI's Counterclaim, the agent was very familiar with the Richmond Hill property, "having worked with them for going on four years now" and having "lost the package last year due to the company prior not willing to reduce the values to reflect what the owner perceived to be the correct replacement costs." Doc. 1-6, p. 5, 7. At this point, we don't know whether the agent knew about RHI's mortgagee interest, we don't know whether she communicated that information to Harleysville, and we don't know whether the relationship between the agent and Harleysville was sufficient to allow the court to attribute the agent's knowledge to Harleysville. Depending on what is learned through discovery about these issues, Harleysville may be estopped from relying on the Application and the Policy to deny coverage for RHI's mortgagee interest if not for the other reasons stated herein.

Second, Harleysville's argument that RHI should not be considered a "loss payee" under the Policy or covered by virtue of N.C.G.S. § 58-43-15 is premised on Harleysville's statement

that, "In fact, it was only after The Hammocks submitted its notice of claim that Harleysville was <u>first made aware</u> that a Deed of Trust had been executed between The Hammocks and RHI, and that RHI had a purported mortgagee interest in the Richmond Hill Inn property." Section I. B. Doc. 28, p. 8-9[5] (emphasis added). This statement is outside of the pleadings and may be contradicted depending on the resolution of RHI's factual allegations set forth above. <u>Dorman</u>, 2010 U.S. Dist. LEXIS 36254. Discovery is needed regarding the veracity of this statement; it cannot be determined by reliance on the Purported Application and Policy alone.[6]

RHI intends to serve discovery after this Court rules on the pending Motion to Transfer and the parties have conducted their Initial Attorneys Conference. The type of information that may be learned through discovery and which could bear on the issues presented by Harleysville in its Motion include the following: (1) that Harleysville and its agent had actual or constructive knowledge of RHI's mortgagee interest; (2) that Harleysville was not prejudiced by the omission of a reference to RHI's mortgagee interest in the Purported Application; and (3) that even if RHI's interest had been written on the Purported Application, Harleysville would still have issued the Policy with no difference in the premium.

Additionally, the Court should delay ruling on Harleysville's Motion until discovery may be conducted regarding the reason that RHI was not listed in the Purported Application or Policy. Assuming *arguendo* that RHI had to be listed as a mortgagee in the Purported Application for it to be covered and it was the mortgagor's act or omission that caused RHI not to be listed on the Purported Application (rather than the act or omission of Harleysville's agent), then any such failure by the Hammocks to include RHI is believed to be the result of unintentional neglect that

---

[5] Harleysville again states this proposition in Section I. C. of its Argument, claiming that RHI is not covered under the Policy because it would allow RHI to enjoy rights based on the Deed of Trust provisions "of which Harleysville <u>had no knowledge</u> until after the loss." Doc. 28, p. 10. (Harleysville does not cite a pleading for this proposition.)
[6] To extent Harleysville is relying on its own Complaint for this statement, RHI notes that the Complaint is unverified.

would not bar RHI's right to recover from Harleysville. North Carolina courts have repeatedly held that the purpose of the standard mortgage clause is to protect the interest of mortgagees, regardless of any neglect or actions of the mortgagor. State Farm Fire & Casualty Co. v. Folger, 677 F. Supp. 844, 846 (E.D.N.C. 1988). "Under the clause there is **nothing** a mortgagor can do that will diminish the mortgagee's right to receive under the policy." Id. (emphasis added). As explained by the North Carolina Supreme Court:

> With respect to the rights of the mortgagee under the standard mortgage clause, it is the generally accepted position that this clause operates as a separate and distinct insurance of the mortgagee's interest, to the extent, at least, of not being invalidated by any act or omission on the part of the owner or mortgagor, unknown to the mortgagee; and, according to the clear weight of authority, this affords protection against **previous acts** as well as subsequent acts **of the assured.**

Federal Land Bank v. Globe & Rutgers Fire Ins. Co., 121 S.E.37, 40, 187 N.C. 97, 102 (N.C. 1924) (emphasis added) (numerous internal citations omitted). Buckner v. United States Fire Ins. Co., 184 S.E. 520, 523, 209 N.C. 640, 645 (N.C. 1935). If discovery shows that it was the mortgagor's act or omission that caused RHI not to be listed on the Purported Application, this previous act should not bar coverage for RHI pursuant to N.C.G.S. § 58-43-15 and the Standard Mortgage Clause in the Policy. The two issues should be resolved concurrently.

Therefore, in the alternative, RHI requests that Harleysville's Motion be denied without prejudice because it goes beyond the pleadings and RHI should be given a reasonable opportunity to respond to it as a summary judgment motion after discovery is conducted.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Judgment on the Pleadings should be denied. In the alternative, this Court should convert Plaintiff's Motion into one for Summary Judgment and hold it open until discovery has concluded.

This the 24th day of May, 2010.

>By:   <u>    s/Ann-Patton Hornthal         </u>
>     NC Bar No: 35477
>     Wyatt S. Stevens
>     NC State Bar No. 21056
>     Attorneys for Defendant
>     ROBERTS & STEVENS, P.A.
>     P.O. Box 7647
>     Asheville, NC 28801
>     Telephone: (828) 258-6992
>     E-mail: aphornthal@roberts-stevens.com
>            wstevens@roberts-stevens.com

# CERTIFICATE OF SERVICE

  I hereby certify that a true and correct copy of Defendant Richmond Hill, Inc.'s Response in Opposition to Plaintiff's Motion for Judgment on the Pleadings was served upon all parties who have an account with CM/ECF in this matter by notice of electronic filing through the CM/ECF system/electronic mail

  This the 24th day of May, 2010.

               By:  s/Ann-Patton Hornthal
                   aphornthal@roberts-stevens.com