UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:09cv377

| | | |
|---|---|---|
| HARLEYSVILLE MUTUAL INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | **REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR** |
| vs. | ) ) | **JUDGMENT ON THE PLEADINGS** |
| RICHMOND HILL, INC., | ) ) ) | |
| Defendant. | ) ) ) | |

Pursuant to Local Rule 7.1, Plaintiff Harleysville Mutual Insurance Company ("Harleysville"), by and through counsel, respectfully submits this Reply Brief to address new arguments raised in Defendant Richmond Hill, Inc.'s ("RHI") Memorandum in Opposition to Harleysville's Motion for Judgment on the Pleadings ("Response Brief").

**I.  RHI's Response Brief Presents New Arguments that are Irrelevant to Harleysville's Motion for Judgment on the Pleadings.**

Harleysville initiated this action to obtain a single declaration from this Court – that RHI *is not* a mortgagee under Harleysville's Policy for The Hammocks. (Doc. 1, p. 6). RHI has responded by asserting three Counterclaims; the first of which seeks a contrary declaration that RHI *is* a mortgagee under Harleysville's Policy ("First Counterclaim"). (Doc. 16, pp. 9-10). Harleysville's Complaint and RHI's First Counterclaim thus present the issue (*i.e.* whether RHI is a mortgagee under the Policy) that Harleysville's Motion for Judgment on the Pleadings ("Motion") seeks to resolve as a matter of law in its favor. (Doc. 27). Harleysville's Motion simply requests that this Court adjudicate this issue now by way of a declaration that RHI is not a mortgagee under Harleysville's Policy. *Id.* Such a declaration would (1) fully adjudicate

Harleysville's action against RHI as a matter of law, and (2) dispose of RHI's First Counterclaim against Harleysville. This is the limited purpose of Harleysville's Motion.

RHI opposes Harleysville's Motion by asserting arguments that ignore the purpose of Harleysville's Motion. In doing so, RHI makes two irrelevant arguments: (1) that it has standing to recover under the Policy as a third party beneficiary; and (2) that, in the alternative, Harleysville's Motion should be denied at this time to allow discovery on the factual issue of whether the insurance agent who brokered the Policy was in fact operating as an agent of Harleysville.[1] (Doc. 29, pp. 11-12, 15-18). These arguments go to RHI's Second and Third Counterclaims in which RHI (1) seeks an equitable lien on any insurance proceeds actually paid to The Hammocks ("Second Counterclaim"), and (2) seeks to recover for the alleged negligence of the insurance broker in failing to identify RHI as a mortgagee under Harleysville's Policy ("Third Counterclaim").

Harleysville's Declaratory Judgment Complaint contains but a single claim for relief in which Harleysville seeks a declaration that RHI is not a mortgagee under the policy issued by Harleysville to The Hammocks. In its First Counterclaim, RHI seeks a declaration of the exact opposite; namely that RHI is a mortgagee under the Harleysville Policy. The instant motion for judgment on the pleadings filed by Harleysville is directed solely to this issue of whether RHI is or is not a mortgagee under the Policy. Harleysville seeks a declaration in this motion that RHI is not a mortgagee under the Harleysville Policy, a declaration that will dispose of the one claim in Harleysville's Complaint and of RHI's First Counterclaim. Harleysville's motion is not

---

[1] RHI also asserts that Harleysville's Motion should be converted to a summary judgment motion because the motion relies on an unverified Complaint. However, for purposes of Harleysville's Motion for Judgment on the Pleadings, there is no requirement that Harleysville's Complaint must be verified. In fact Rules 7, 8, 9, 10, and 11 of the Federal Rules of Civil Procedure which govern the form and manner of a Complaint do not require that a Complaint be verified.

directed to RHI's Second and Third Counterclaims. The adjudication of the issues presented by RHI's Second and Third Counterclaims are separate and apart from the legal issue of whether RHI is insured as a mortgagee under the Harleysville Policy, and the issues presented by RHI's Second and Third Counterclaims will have to be resolved by this Court after the benefit of discovery. For this reason, RHI's arguments in this Motion as to its Second and Third Counterclaims should be disregarded. Therefore, in the legal analysis that follows, Harleysville addresses the issue of RHI's (erroneously) claimed status as mortgagee rather than focusing on issues that are not relevant to the Motion currently before this Court.

## II. Harleysville's Policy Conforms with the Mortgage Provisions of §58-44-15 (North Carolina's Standard Fire Policy).

RHI now raises the argument that Harleysville's Policy should be reformed to include RHI as a mortgagee because the Policy's mortgage provisions do not conform to those of North Carolina's Standard Fire Policy as codified by N.C.G.S. §58-44-15. (Doc. 29, pp. 7-9). RHI's argument lacks merit, and is of no consequence to the dispositive fact that RHI is not a listed mortgagee under Harleysville's Policy.

Harleysville recognizes its Policy must "conform **in substance**" with the mortgage provisions of North Carolina's Standard Fire Policy. N.C.G.S. §58-44-15(b) (emphasis added). And, in fact, the Harleysville Policy does conform with the Standard Fire Policy. A simple side-by-side comparison of the mortgage clause of §58-44-15 to the mortgage clause of Harleysville's Policy illustrates this fact:

| §58-44-15<br>**Mortgage interests and obligations** | **Harleysville's Policy** |
|---|---|
| If loss hereunder is made payable, in whole or in part, to a designated mortgagee not named herein as the insured, such interest in this policy may be cancelled by giving to such mortgagee a ten days' written notice of | **14. Mortgage Provisions** – If a mortgagee (mortgage holder) is named in this policy, loss to building property will be paid to the mortgagee and "you" as their interest appears. If more than one mortgagee is named, they will be paid in order of precedence. |

3

cancellation.

If the insured fails to render proof of loss such mortgagee, upon notice, shall render proof of loss in the form herein specified within sixty (60) days thereafter and shall be subject to the provisions hereof relating to appraisal and time of payment and of bringing suit. If this Company shall claim that no liability existed as to the mortgagor or owner, it shall, to the extent of payment of loss to the mortgagee, be subrogated to all the mortgagee's rights of recovery, but without impairing mortgagee's right to sue; or it may pay off the mortgage debt and require an assignment thereof and of the mortgage. Other provisions relating to the interests and obligations of such mortgagee may be added hereto by agreement in writing.

The insurance for the mortgagee continues in effect even when "your" insurance may be void because of "your" acts, neglect, or failure to comply with the coverage "terms". The insurance for the mortgagee does not continue in effect if the mortgagee is aware of changes in ownership or substantial increase in risk and does not notify "us".

If "we" cancel this policy, "we" will notify the mortgagee at least ten days before the effective date of cancellation if "we" cancel for "your" nonpayment of premium, or 30 days before the effective date of cancellation if "we" cancel for any other reason.

"We may request payment of the premium from the mortgagee if "you" fail to pay the premium.

If "we" pay the mortgagee for a loss where "your" insurance may be void, the mortgagee's right to collect that portion of the mortgage debt from "you" then belongs to "us". This does not affect the mortgagee's right to collect the remainder of the mortgage debt from "you".

As an alternative, "we" may pay the mortgagee the remaining principal and accrued interest in return for a full assignment of the mortgagee's interest and any instruments given as security for the mortgage debt.

If "we" choose not to renew this policy, "we" will give written notice to the mortgagee at least ten days before the expiration date of this policy.

This straightforward comparison not only shows that the mortgage provisions in Harleysville's Policy conform in substance (as required by §58-44-15(b)), but that the language of Harleysville's Policy actually goes beyond the language of §58-44-15 by, for example,

specifically stating that insurance will continue for the mortgagee even if acts of the insured (*i.e.* The Hammocks) void the Policy.[2]

Rather than comparing the substantive mortgage provisions of §58-44-15 with Harleysville's Policy, RHI argues it should be deemed a mortgagee under the Policy because Harleysville's Policy does not "include a place to list (or leave blank) the mortgagees" as is depicted on the form provided by §58-44-15. (Doc. 29, p. 9-10). The "place" referenced by RHI appears on the form declarations page provided by §58-44-15, and it simply indicates a space to "insert name(s) of mortgagees and mailing address(es)." Harleysville's Policy would have listed a mortgagee on its declarations page had Harleysville ever been notified of the existence of a mortgagee in the first place. In essence, RHI argues that it should be given the rights of a mortgagee because there was no blank on the Policy's declarations page to list RHI as a mortgagee. However, neither The Hammocks nor RHI ever notified Harleysville of RHI's mortgagee interest nor asked Harleysville to list RHI as a mortgagee. Therefore, of course RHI was not so listed. As detailed in Harleysville's initial Brief in support of this Motion, RHI can point to no case that affords mortgagee status to an entity not named on the Policy, pursuant to this (or any other) theory of recovery.

In any event, the substantive provisions of §58-44-15 consist of the 165 lines of coverage provisions that follow the declarations page form provided by §58-44-15. RHI does not dispute that Harleysville's policy conforms to the 165 lines prescribed by §58-44-15. Rather, RHI simply argues a non-substantive formatting issue in an attempt to invalidate Harleysville's Policy

---

[2] RHI questions why Harleysville's Policy contains a mortgage clause if no "unnamed" mortgagee was to be insured under the Policy. (Doc. 29, p. 8). The answer is obvious. Section 58-44-15 mandates that such substantive mortgage provisions be contained in the policy and conform in substance to the statute. Therefore, such provisions are contained in Harleysville's Policy notwithstanding the fact there are no mortgagees actually identified under the Policy.

with The Hammocks. To accept this argument would allow RHI to elevate the simple form of North Carolina's Standard Fire Policy over its substance, which §58-44-15 does not contemplate. *See* N.C.G.S. §58-44-15(b) (policy provisions must conform "in substance" with the statute). This argument is clearly manufactured by RHI in an attempt to side-step the salient fact that The Hammocks did not contract with Harleysville for RHI to be a mortgagee under the Policy, and therefore RHI was never insured as a mortgagee under the Policy.

### III. RHI's Proposed Interpretation of N.C.G.S. §58-43-15 Ignores Proper Statutory Interpretation.

A clear and practical reading of N.C.G.S. §58-43-15 leads to one conclusion – RHI would be a mortgagee under the Policy if (1) RHI was identified on the Policy as a mortgagee, or (2) Harleysville and The Hammocks had otherwise entered into an agreement allowing RHI mortgagee status under the Policy. Neither circumstance is present in this case. For this reason, RHI makes a new argument that §58-43-15 is ambiguous, and that such ambiguity should be interpreted in favor of RHI to allow it mortgagee status under the Policy.

RHI contends that §58-43-15 is ambiguous in its reference to "an agreement with the insured". RHI argues this phrase should be interpreted to mean "an agreement" that The Hammocks may have had with RHI to insure RHI under the Policy. To make this argument, RHI extracts the "an agreement" phrase from the full text of the statute, and attempts to create an ambiguity by isolating this phrase from the rest of the statutory text in which it is contained. Rather than interpreting the phrase with the text of the statute, RHI's argument pulls the phrase out of the statute, and arbitrarily labels it ambiguous without any support. Such interpretation is contrary to North Carolina's principles of statutory construction. To interpret statutes, North Carolina courts begin by looking to the plain language of the statute itself. *Smith Chapel Baptist Church v. City of Durham,* 517 S.E.2d 874, 878 (N.C. 1999). In doing so, "[o]rdinary rules of

6

Case 1:09-cv-00377-MR-DLH   Document 32   Filed 06/14/10   Page 6 of 11

grammar apply when ascertaining the meaning of a statute." *Dunn v. Pacific Employers Ins. Co.,* 418 S.E.2d 645, 648 (N.C. 1992). A provision of a statute "must be accorded only that meaning which other modifying provisions and the clear intent and purpose of the [statute] will permit." *Watson Industries v. Shaw, Comr. of Revenue,* 69 S.E.2d 505, 511 (N.C.1952). The intent of the statute "may be inferred from the language used". *Dunn,* 418 S.E.2d at 648.

In accordance with North Carolina law, Harleysville's supporting brief provides this Court with the logical exercise of substituting the names of the parties at issue into the statute to demonstrate that Harleysville's reading of §58-43-15 is correct. (Doc. 28, p. 11). The "agreement" referenced by §58-43-15 is plainly an agreement between the insurer (Harleysville) and the insured (The Hammocks). Because Harleysville's analysis establishes the clear and definite intent of §58-43-15, there is no reason to seek a contrary intent that does not otherwise exist within the express terms of the statute. *Lemons v. Old Hickory Council, BSA,* 367 S.E.2d 655, 658 (N.C. 1988) ("[w]hen the language of a statute is clear and unambiguous, there is no room for judicial construction, and the courts must give it its plain and definite meaning.").

Significantly, RHI does not rely on principles of statutory construction in support of its argument. Rather, RHI relies on case law which espouses the principle that ambiguous **insurance policy provisions** should be interpreted liberally in favor of coverage for the insured. (Doc. 39, pp. 7-9). This principle is based on the rationale that insurance policies should be interpreted against the insurer who chose the terms of the policy's provisions. *Digh v. Nationwide Mut. Fire Ins. Co.,* 654 S.E.2d 37, 39 (N.C.App. 2007). However, principles of insurance policy interpretation do not apply to §58-43-15 because §58-43-15 is not an insurance policy; it is **a statute**.

RHI attempts to avoid this fact by arguing that §58-43-15's provisions are compulsory insurance provisions, and as such, RHI argues they should be interpreted liberally in RHI's favor. (Doc. 29, p. 7). Such assertion is incorrect. RHI relies on case law that interprets compulsory insurance statutes – specifically *State Capital Ins. Co. v. Nationwide Mut. Ins. Co.,* 350 S.E.2d 66, 68 (N.C. 1986). *State Capital* accorded a liberal construction to North Carolina's Motor Vehicle Financial Responsibility Act, a compulsory automobile insurance statute that is "read into" every North Carolina automobile policy. However, N.C.G.S. §58-43-15 does not contain mandatory insurance provisions like those of a compulsory insurance statute. Rather, §58-43-15 is a *non-compulsory* insurance statute that governs the manner and affect of payment in the event there is a mortgagee expressly recognized by an insurance policy or by an agreement between the insurer and the insured.[3] Section 58-43-15 does not provide its own mandatory insurance provisions, and it is separate and apart from the compulsory insurance provisions mandated by §58-44-15 (North Carolina's Standard Fire Policy).

While RHI's arguments are novel, they do not comport with North Carolina's statutory principles of construction, and if adopted, they would lead to an unreasonable and disjointed interpretation of §58-43-15. In fact, Harleysville is aware of no case in any jurisdiction (and RHI cites none) that has accepted the strained argument that an alleged ambiguity in a non-compulsory insurance statute drafted by the Legislature must be construed against an insurance company. RHI's arguments are thus without merit. A declaration that RHI is not a mortgagee

---

[3] RHI argues the title "Policies for the benefit of mortgagees" for §58-43-15 is consistent with a liberal interpretation of its language. This is a "red herring" argument that should not lead to any inference that the statute's language should be construed in favor of RHI. This title simply describes that §58-43-15 is intended to govern instances where a mortgagee is expressly recognized by the terms of the policy.

under Harleysville's Policy would be in accordance with the proper statutory construction of §58-43-15.

### IV. RHI's "Agreement" with The Hammocks in the Deed of Trust Does Not Even Give RHI Mortgagee Status Under the Harleysville Policy.

Even if RHI's strained interpretation of §58-43-15 were accepted, the "agreement" between RHI and The Hammocks in the Deed of Trust does not even entitle RHI to independent rights *vis-à-vis* Harleysville as named mortgagee. The agreement in the Deed of Trust required only that The Hammocks obtain insurance for the property, and that "all proceeds from any insurance . . . be applied to the debt [owed to RHI]." (Doc. 28, p. 9, fn. 6). This Deed of Trust does not require The Hammocks to secure insurance for RHI, individually, as a mortgagee. It only requires The Hammocks to apply all insurance proceeds it may obtain to the debt owed to RHI. Consequently, the "agreement" that RHI desires to enforce against Harleysville does not even afford RHI the right to an independent claim for insurance under the Policy. Rather, the "agreement" cited by RHI only gives RHI the right to receive from The Hammocks any insurance proceeds that The Hammocks would be entitled to recover under the Policy. These facts were set forth by Harleysville in its brief in support of its Motion (Doc. 28, pp. 13-14), and RHI has not disputed this interpretation of the Deed of Trust. Therefore, taking RHI's argument to its logical conclusion only leads to the enforcement of an "agreement" that does not afford RHI the rights of a mortgagee under the Policy or the ability to assert rights of a mortgagee against Harleysville.

## CONCLUSION

For the foregoing reasons, and the reasons stated in Harleysville's Memorandum of Law in Support of its Motion for Judgment on the Pleadings (Doc. 28), this Court should (1) grant the requested relief in Harleysville's Complaint, and issue a declaration that RHI is not a mortgagee under the Policy, and is not entitled to recover under the Policy independent of the claim of The Hammocks, and (2) dismiss RHI's First Counterclaim, with prejudice.

This the 14TH day of June, 2010.

/s/ David L. Brown
David L. Brown
N.C. State Bar No. 18942
dbrown@pckb-law.com
Brady A. Yntema
N.C. State Bar No. 25771
byntema@pckb-law.com
PINTO COATES KYRE & BROWN, PLLC
3203 Brassfield Road
Greensboro, NC 27410
Telephone: 336.282.8848
Facsimile: 336.282.8409

Michael R. Nelson
Pa. State Bar No. 65679
NELSON, LEVINE, de LUCA & HORST
518 East Township Line Rd.
Suite 300
Blue Bell, PA 19422

*Attorneys for Plaintiff Harleysville Mutual Insurance Company*

CERTIFICATE OF SERVICE

The undersigned certifies that the document to which this Certificate is affixed was served upon the party(s) to this action by means of the Electronic Filing System of the United States District Court for the Western District of North Carolina on June 14, 2010.

/s/ Brady A. Yntema
Brady A. Yntema
N.C. State Bar No. 25771
byntema@pckb-law.com
PINTO COATES KYRE & BROWN, PLLC
3203 Brassfield Road
Greensboro, NC 27410
Telephone: 336.282.8848
Facsimile: 336.282.8409
*Attorney for Plaintiff Harleysville Mutual Insurance Company*